H. J. LYNCH, Appellant, v. SIDNEY R. W. KERSLAKE, Appellee.

BILLS AND NOTES: Actions—Fraud—Matters Necessary to Show. 1 The defendant, to maintain a defense of fraud and misrepresen-

tation, when sued on his note, must establish that the plaintiff made the representations, substantially as charged in the answer, for the purpose of deceiving him, and that the same were untrue, and so known to plaintiff when plaintiff made them, and that defendant relied upon the same when given, and would not have given the note except therefor.

PLEADING: Construction in General—Fraud Must Be Specifically
2 Set Out. In pleading fraud, whether in petition or answer, it is not sufficient to allege it in general terms, but the things which constitute the fraud relied on must be substantially set out.

EVIDENCE: Opinion Evidence—Statements as to Value of Insur-
3 ance. Statements that an insurance policy was a better investment than buying a farm or interurban railway stock, and that the company could loan money paid in at 6 per cent, and that it "worked and lived on compound interest," and that the policy would be a good investment, held to be merely matters of opinion, and ones on which fraud could not be predicated.

FRAUD: Acts Constituting—Statement of Fact—Endowment Policy
4 as Investment Policy. While the statement that the defendant would receive for his premiums an investment policy, and not an insurance policy, was a statement of fact, yet the same could not constitute actionable fraud, because it was true that the endowment policy, as issued, was an investment policy, as well as a life insurance policy.

INSURANCE: Action on Policy—Statements of Agent. Where the
5 application signed by the defendant, the contents of which were known to him before signing, was clearly an application for the very policy which he received, he cannot be heard to say that he was deceived by anything the plaintiff said, touching the obligation which the company would assume to him as consideration for his premium note.

INSURANCE: Action on Policy—Agreement with Agent. Evidence
6 reviewed, in an action on an insurance premium note, and held insufficient to show that the insurance agent had agreed that the insured should have three months to consult another policyholder, to ascertain the truth of certain representations, and as to whether, in the judgment of such policyholder, the insurance was a good investment.

EVIDENCE: Burden of Proof—Agreement with Agent. In an ac-
7 tion on an insurance premium note, where the defense was that the defendant should have three months to consult another

policyholder as to certain representations, and as to whether it was a good investment, the burden was on the defendant to show that the agreement relied upon was made substantially as alleged.

*Appeal from Cedar District Court.*—JOHN T. MOFFIT, Judge.

JULY 7, 1919.

ACTION on a promissory note. Defendant admits the execution and delivery of the note, and pleads: (1) That the note was obtained by fraudulent representation; (2) that the note was not to become operative as a binding contract until after defendant had an opportunity to investigate the truth of the representations made, and whether or not the matters for which the note was given would constitute a good investment. Verdict and judgment for the defendant in the court below, with costs. Plaintiff appeals. —*Reversed.*

*Luberger & Lenihan* and *C. J. Lynch,* for appellant.

*C. O. Boling* and *J. C. France,* for appellee.

GAYNOR, J.—The plaintiff brings this suit upon a promissory note executed by the defendant, for the amount of the first premium on a life insurance policy. The policy was applied for by defendant in writing; and later, the policy was issued upon the application, and received by defendant. The plaintiff is the agent who solicited the insurance and took the application, and the note was made payable to him, for reasons that hereafter appear.

The defendant admits the execution of the note and its delivery to the plaintiff, but seeks to avoid payment upon the following grounds: (1) That, to induce the defendant to execute the note, plaintiff made certain false and fraudulent representations, which, operating on the mind of the defendant, induced him to make the note and deliver it to the plaintiff, a thing which he would not have done, had it

not been for the false and fraudulent representations so made. (2) That, just before the application for the insurance was signed and the note given, it was stipulated and agreed between plaintiff and defendant that defendant should have three months' time in which to talk with one O. M. Bundy, of Mechanicsville, for the purpose of ascertaining whether the representations made by the plaintiff were true, and whether, in the judgment of Bundy, it was a good investment for the defendant; that it was agreed that, if Bundy was of the opinion that it was a good investment for the defendant, and the facts and representations made by the plaintiff were true, then the defendant was to accept the policy, and the note was to become a binding obligation, but if Bundy declared otherwise, the note should be considered null and void and of no force and effect; that, within three months of the giving of the note, he made inquiry of Bundy, and Bundy replied that it would not be a good investment; that, in his opinion, plaintiff's representations were not true; that, within three months, the defendant returned the policy to the company.

Defendant's first defense involved statements made by the plaintiff upon which he predicates fraud, and are: (1) That the policy was a better investment than buying a farm or interurban stock that pays 7 per cent interest per annum. (2) That the company could loan what defendant paid in at 6 per cent. (3) That the company worked and lived on compound interest. (4) That it was not a life insurance policy, but an investment policy. (5) That the defendant could draw out the money paid in, at any time he became dissatisfied. (6) That it would be a good investment.

These are the only affirmative allegations made on which fraud is predicated. While an amendment was filed, it does not affirmatively charge the practicing of any fraud upon the defendant, except as above stated. It does say in the

amendment that plaintiff relied upon a statement made, that the policy, when received, would pay a dividend of 6 per cent. He does not affirmatively allege that plaintiff made such representation.

To entitle the defendant to relief on the ground of fraud, the relief must be granted or denied on the thing charged to have been said or done by the plaintiff, on which the fraud is predicated, and none other can

1. BILLS AND NOTES: actions: fraud: matters necessary to show.

be considered. The facts charged as constituting the fraud and misrepresentation must, when proven, entitle the defendant to the relief prayed against the note. Therefore, to entitle the defendant to relief on the ground of fraud and misrepresentation, he must establish the following propositions: (1) That the plaintiff made the representations charged to have been made by him substantially as charged in the answer. (2) That he made them for the purpose of deceiving the defendant. (3) That they were untrue. (4) That plaintiff knew them to be untrue, at the time he made them. (5) That defendant relied upon the representations in giving the note, and would not have given the note except for the representations so made.

We will first consider defendant's defense based upon fraud and misrepresentation. It is hornbook law that the mere expression of an opinion, mere trade talk, does not lay the basis for actionable fraud; and fraud

2. PLEADING: construction in general: fraud must be specifically set out.

must be actionable, in order to be defensive. Fraud is never presumed, and the burden rests on him who asserts it. In pleading fraud, it is not sufficient to allege fraud in general terms. The things which constitute the fraud relied on must be substantially set out in the pleading, whether it be the petition or answer. This, defendant has done.

The statements which the defendant says

**3. EVIDENCE: opinion evidence: statements as to value of insurance.** constitute fraud, upon which he relies, as found in the first, second, third, and sixth charges, are so clearly matters of opinion that they do not serve as a basis for actionable fraud. Nor are they shown to be untrue in fact, nor is there anything in the record from which an inference could be drawn that they were untrue.

The fourth allegation of fraud, to wit, that the defendant would receive an investment policy, and not a life insurance policy, is, of course, a statement of a fact. The issue is an investment and life insurance policy. It is a 20-year endowment policy. The fruits of the policy would not depend entirely upon the life of the insured.

**4. FRAUD: acts constituting: statement of fact: endowment policy as investment policy.** If he lived 20 years, and complied with all the conditions of the policy, the policy matured. Further than that, the application which the defendant signed, the contents of which he says he knew before he signed it, and before the note was given, is clearly an application for the very policy he received, and to secure which he made the application. The note was given for the premium due upon the kind of policy for which he applied.

**5. INSURANCE: action on policy: statements of agents.** He cannot, therefore, be heard to say that he was deceived by anything the plaintiff said, touching the character of the obligation which the company would assume to him in consideration of the note given. Nor is there anything in the record to show that he was, in fact, deceived. The application states what the defendant was to receive in consideration for the note given. In the application, he says:

"I, the undersigned [meaning the defendant], do hereby apply for insurance in the Bankers Life Company of Des

Moines, Iowa, on the 20-year endowment plan. Sum to be insured, $10,000. First premium, $634.50."

The fifth allegation, if made, was undoubtedly not a true statement of the fact; for we may assume he could not draw out all the money he paid in at any particular time, with 6 per cent interest. Even if such a statement were made, the defendant would not be justified in relying on it, and the record shows that the defendant did not rely on such statement. He gives evidence that he questioned it, and argued that it could not be so. In fact, it would be apparent to any man of ordinary intelligence that no company issuing life or endowment policies could carry a risk for an indefinite period, and then, on the mere demand of the insured, pay back to him, whenever he might elect, the full amount that he had paid for carrying the risk, with 6 per cent interest. We need not discuss this further; for we cannot find in the record that the plaintiff ever affirmed to the defendant a proposition so unreasonable upon its face. So we dismiss these grounds from further consideration, for the reason that they are mere matters of opinion, and, even if considered as stating substantive facts, they are not shown to be untrue, or such as the defendant, as a reasonably prudent man, is justified in relying on.

We find no defense to the note based on the alleged fraud, even conceding the statements to have been made substantially as charged.

This brings us to a consideration of the second ground on which defendant seeks to avoid payment of his obligation: to wit, that it was stipulated and agreed between plaintiff and defendant that defendant should have three months' time in which to talk with O. M. Bundy, of Mechanicsville, for the purpose of ascertaining whether or not the representations made by the plaintiff were true, and whether, in the judgment of Bundy, it

6. INSURANCE: action on policy: agreement with agent.

was a good investment; and that the application was made and the note given with the mutual understanding between the parties that the note was not to become a binding obligation on the defendant until he had time to investigate, as aforesaid, and ascertain whether the statements made to induce the giving of the policy were true or not, and whether or not it was, in fact, a good investment for the defendant. If such agreement is established, and it is shown further that, within the three months, the defendant did make the investigation agreed on, and found the representations to be untrue, and the transaction not a good investment for him, and he did then return the policy, there might be something in this defense. See *McNight v. Parsons*, 136 Iowa 390; *Burke v. Dulaney*, 153 U. S. 228 (38 L. Ed. 698); *Cavanagh v. Iowa Beer Co.*, 136 Iowa 236; *Watkins v. Bowers*, 119 Mass. 383; *Sutton v. Weber*, 127 Iowa 361. But we turn to the record for the proof of this contract, and nowhere find any evidence that sustains defendant's contention. Defendant was questioned three or four times as to what was said between him and the plaintiff before and at the time the application was signed and the note given. He was first asked this question:

"What was said on that day [meaning the day the application was signed and the note given] by Mr. Lynch about the investment? A. Well, he commenced to talk life insurance investment; he told me that it was better than buying a farm or land or buying stock or bonds or interurban stock. I says, 'Well if it is better than that,'—that kind of interested me; so I listened to him, and he wanted to get me for $10,000, like I signed for. Q. Just state what he said. A. 'Won't you take,' he says, '$2,000?' I said, 'If it is as good an investment as you say it is, I'll take the full amount.' Q. What did he say to that? A. He said it was a better investment than buying land or stock, and I says, 'What will it net me?' 'Six per cent.' I says, 'What do you

and the company do with the money?' 'Put it out at 6 per cent.' 'How can you put it out at that and pay 6 per cent? How can you live on that,—what do you live on?' He says, 'Can't you take $2,000?' I says, 'If it is as good as you say it is, I'll take the full amount;' and Mr. McHugh [a gentleman who was accompanying plaintiff at the time he was soliciting the defendant] spoke up and said: 'That's a good investment. The auditor of state backs the company up. You can't lose out.' So I thought I wouldn't trust either of them. Q. State what Mr. Lynch said to you and what you said to him. A. Well, I told him I was busy making hay. I said, 'I am busy. I can't attend to it now,'—this was the 5th of August, and he said: 'I will give you three months' time without interest.' I said, 'I have never seen a life insurance policy, and don't know anything about it, and I don't want to be forced into anything while I am busy.' He says, 'I'll give you three months without interest, and that will give you—' 'Well,' I says, 'give me the names of some of your policyholders;' and he mentioned several, among them Mr. Bundy. I says, 'All right, I'll take Bundy. If it is as good an investment as you say, I'll take it at 6 per cent. If Bundy says it is a good investment for me, a single man, I will take it. If not, I won't.' 'Very well,' he says, 'you go and see Bundy.' I went to see Bundy a few days before the three months elapsed. I don't remember anything further that was said. He drew up the contract and note, and I signed it, with the intention of paying it, provided—well, I signed the note and contract on those terms I have just stated."

He was asked:

"Was there any other paper signed besides the note? A. An application. Q. How came you to sign the application? A. To get a life insurance policy; to see what it was, as I had never seen a life policy before. Q. When was that application prepared, with reference to the time you

signed the note? A. The same day. Q. Was it prepared before or after you signed the note? A. Before. It was signed on the same day."

It will be noted that nowhere in his testimony does the defendant say that Lynch said that he could have three months to decide whether he would accept the policy. Nowhere does he say that there was anything said by Lynch or by him to the effect that the note should not become a binding contract until three months had elapsed. All he said on this point was that Lynch said he would give him three months to pay the first premium on the policy, and it appears that Lynch did this, and that the note was drawn up payable in 90 days. At the time the note was executed and the application signed and delivered to Lynch, Lynch delivered to the defendant a receipt, which the defendant says he read and knew the contents of at the time. The receipt reads as follows:

"Bankers Life Company,

"Des Moines, Iowa.

"Dated at Lisbon, Iowa, this 5th day of August, 1916.

"Received from S. R. W. Kerslake his application dated 8-6-16 to the Bankers Life Company, Des Moines, Iowa, for a policy of $10,000.00 on the 20 End. plan, and settlement for the first annual premium of $634.50 as follows: Note. It is understood that the applicant will submit to an examination by an authorized medical examiner of the company, and that, in case the application is not approved by the company, any payments made as above indicated shall be returned to the applicant upon surrender of this receipt."

He said:

"I understood this receipt to be for the life insurance policy, and to go before the doctor for an examination."

It appears from the record that the defendant went before the medical examiner, was duly examined, answered all questions that are ordinarily asked by the physician on

such examination, touching his antecedents and his own physical condition; and that this application, with the examination attached, duly signed by the defendant, was forwarded to the company, the risk accepted, and the policy issued to the defendant and sent to him within two or three days thereafter. Defendant says that, when he received it, he decided to keep it until he saw Bundy, and did keep it until he returned it to the company, somewhere during the first week in November.

As said before, the burden of proof is on the defendant to show that the representations were made substantially as claimed. The burden was on him to show all the facts essential to make a complete defense upon the allegation of fraud. It is also true that the burden is also on the defendant to show that this agreement relied upon was made substantially as alleged. He has failed to do this by any substantive proof, and for failure of proof, this defense fails.

7. EVIDENCE: burden of proof: agreement with agent.

Because of controversies over the abstract, we have been compelled to go to the transcript; and a careful reading of the transcript satisfies us that the defendant has failed in his proof, upon both defenses urged in his answer, —has failed to make proof of facts which, under the law, constitute a defense to the note sued on. The defendant having failed in his defense, the plaintiff was entitled to a verdict for the amount of the note sued on, and the court erred in overruling the plaintiff's motion for a directed verdict at the conclusion of plaintiff's testimony, and also at the conclusion of defendant's testimony. The cause is, therefore,—*Reversed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.