PALLY PEASE, Appellee, v. CITIZENS STATE BANK OF EARLHAM, Appellant.

No. 39859.

DECEMBER 13, 1929.

. REHEARING DENIED APRIL 16, 1930.

*William E. Miller, John A. Guiher,* and *W. T. Guiher,* for appellant.

*Howard L. Bump* and *C. C. Putnam,* for appellee.

FAVILLE, J.—This is the second appeal of this case. For the former opinion, in which the original issues and the facts are discussed, see *Pease v. Citizens State Bank,* 204 Iowa 70. Both parties having appealed, we will refer to the defendant as the appellant, and to the plaintiff as the appellee.

I.   We will first consider the questions raised by the plaintiff's appeal.

The appellee's cause of action, as originally brought, was pleaded in five counts.   Under his original petition, appellee sought to recover for damages upon each of said counts, because  of the claimed negligence of the appellant in making each of the loans described in said several counts, respectively.   The cause was submitted to the jury upon the first trial as to each of said five counts.   The jury returned a general verdict in favor of the appellee, and answered special interrogatories submitted to it by the court.   The jury, in answer to said special interrogatories, stated that it found for the appellee on the loan in controversy known as the Dunbar loan, and in answer to special interrogatories as to each of the other four loans involved in said cause, stated

that it did not find for the appellee as to each of said loans. In ruling on the appellant's motion for a new trial, the court ordered a remittitur so as to conform the verdict to the amount of principal and interest due on the Dunbar loan, and found that the jury had returned verdicts for the bank as to each of the other loans. The clerk did not, at the time, enter formal judgment in favor of the bank as to the said four counts. This should have been done. Section 11576, Code, 1927. The bank appealed the case. In the opinion we said:

"Count 3 is the only count to which this appeal relates, as the jury found in favor of the defendant-bank on the other four counts."

We also said:

"It is to be remembered that, at the time of this trial, the petition of plaintiff was in five counts, and that these counts involved different loans to different borrowers, and had no relation to the Dunbar loan."

After the reversal of said cause by this court and the issuance of procedendo, the bank filed a motion for formal judgment upon the special findings of the jury as to said four counts, and the court entered a formal judgment dismissing said counts. From this entry of formal judgment no appeal was taken. After said reversal, the appellee filed an amended and substituted petition, in which, instead of pleading its cause of action in different counts, it pleaded the same in one count, alleging, however, the specific items embraced in the four counts above referred to, upon which recovery had been denied in the former trial. The court sustained the appellant's motion to strike the portions of the petition which referred to said four items, and refused to admit testimony in regard to the same. These rulings form the basis of the appellee's appeal.

The appellee's contention is that a general reversal of a law action sends the case back for retrial upon all the issues in the case, and that, because of said general rule, the appellee was entitled to a retrial of all the questions involved in the original case. The opinion on the former appeal made it clear and definite that said appeal involved only the question of the one count in the original petition known as the Dunbar loan.

The reversal was limited solely to a consideration of that one item. On the former appeal, the bank appealed only from the order and judgment as to the Dunbar loan. The formal judgment on the special verdict was entered on February 18, 1928, after reversal. No appeal was taken by the appellee from said formal judgment dismissing the causes of action pleaded in said four counts. The appellee contends, and sought by its amendment to plead, that it had but one cause of action, and that the various loans were merely items of damage growing out of the general negligence claimed against appellant. It is to be noted that the action is at law, and, as originally brought, the appellee pleaded in separate counts five separate causes of action. It was defeated as to four of these separate counts. Judgment has been duly entered upon the special verdicts of the jury as to those several separate counts. The decision of this court was expressly limited as to the one count then involved in the case. The reversal, it is true, was a general reversal as to the only count then left in the case, but such reversal did not reopen the case as to the other counts which had been determined adversely to the appellee, and regarding which a formal judgment was later entered by the court, and from which no appeal has been taken. The court did not err in striking from the appellee's amended and substituted petition its claim for recovery on the said four counts and in rejecting the evidence regarding the same.

II. We now turn to a consideration of the questions involved in defendant's appeal.

Appellant contends that the trial court should have directed a verdict in its favor, in whole or in part. It is to be remembered that the gist of appellee's action is a claim for damages  for negligence in making improvident loans of appellee's funds. The only one of said loans under consideration upon the retrial was the so-called Dunbar loan. Appellant's contention was and is that said loan was made by one Hill, in his individual capacity, as appellee's agent, and not for and in behalf of the bank of which he was an officer. The evidence in regard to said Dunbar loan involves two transactions: (1) the original loan to Dunbar of $10,000, on March

24, 1920, and (2) a renewal or enlargement of said loan to $17,500, on March 17, 1921. These two loans were involved in the former appeal.

In regard to the $10,000 loan, it was contended upon this trial, as upon the former trial, that Hill was acting individually, and not for appellant, in what he did in connection therewith. Upon the second trial, the evidence in regard to this transaction was substantially the same as upon the former trial. There is a claimed change in the issues, which we will consider later. In the opinion on the former appeal we said:

"The fact that Hill was cashier of the defendant-bank does not mean that he could not have a private loan business and act independently of the bank in such matters. The question is, under the voluntary issue, did he act as such individual? The burden was upon the plaintiff to prove, by a preponderance, that the bank, and not Hill, as an individual, acted for the plaintiff in the instant matter. Appellant contends that the evidence does not support this finding, and that the trial court erred in this particular in overruling the defendant's motion for new trial. The defendant did offer evidence, under its general denial, that Hill, at the time in question, was not acting for the bank, but as an individual; and if we assume, *arguendo,* that the voluntary issue was properly submissible in this case, we must find the necessary evidence to sustain a verdict on this issue."

We reviewed the evidence as to this transaction, and as to Hill's agency, and said:

"The record is clear that the bank did not make loans of private funds, and whatever loans Mr. Hill made in a private capacity had nothing to do with the books and records of the bank; and there is no evidence in the record that any relation of principal and agent existed between the bank and Pease after Couch left, July 1, 1917. We conclude, after an examination of the record facts, that there is no legal justification upon which to base the recovery of the $10,000 part of the Dunbar loan from the defendant-bank. * * * The record is barren of any showing that the Citizens State Bank had any connection with the private affairs of plaintiff, except to carry his balance in the bank, subject to check by plaintiff or debit slip made by Hill as the agent

of Pease. The relation between plaintiff and the bank was that of debtor and creditor, and it was clearly such after Couch left the bank, in July, 1917. Plaintiff's own evidence refutes any other relationship. As heretofore stated, the Dunbar loan originated between two and three years after the original arrangement which plaintiff pleads in his amended petition, which arrangement ceased to function, under the evidence offered by the plaintiff. * * * Since a reversal must be ordered as to the first phase of the Dunbar loan, we will not pursue the inquiry further as to the liability of the bank in the matter of the $7,500 under the respective contentions of the parties hereto. The evidence is in apparent conflict as to this matter.''

Of course, after a reversal, it was allowable for the parties to furnish further proof, if the same were available, on the question as to whether Hill was acting for himself or for the bank in making the original Dunbar loan of $10,000. As before stated, there is no substantial change in the evidence at this point. If, under the former appeal, as we said, there was ''no legal justification upon which to base the recovery of the $10,000 part of the Dunbar loan from the defendant bank,'' the same is true under the present record. This became the law of the case, and is controlling upon the trial court, where the same state of facts is shown upon a retrial.

We reach the conclusion at this point that the court should have sustained appellant's motion to withdraw from the consideration of the jury the question of the original Dunbar loan of $10,000 and interest, and should have submitted to the jury only the question of appellant's claimed liability for the $7,500 included in the $17,500 Dunbar loan. This conclusion is subject, however, to one matter: namely, a claim of a new ''theory'' or new issue in the case upon the second trial. This question we shall now consider.

III. The original petition pleaded appellee's cause of action as follows:

''That, on or about the year 1916, the plaintiff intrusted to the said defendant divers sums of funds, consisting of notes and moneys in the aggregate amounting to about the sum of

 fifty-two thousand (\$52,000) dollars, for the purpose of making of said funds safe and prudent investments, upon the good judgment and fidelity of the said bank and its officers to carefully and prudently invest said funds in loans, and such loans as would ordinarily be approved by a prudent banker; and the said defendant then and there accepted such funds, and orally agreed with the plaintiff that in the investment of said funds it would exercise the same degree of diligence, care, and judgment as the defendant exercised in its own loans and business. That, in the disposition of said funds for said purpose, the plaintiff gave to the defendant bank no specific instructions as to the character of the investments to be made and the securities to be taken for such investments, only that the bank take what would ordinarily be considered by prudent persons as good, safe loans and securities. That the plaintiff relied altogether upon the judgment and fidelity of the defendant bank and its officers in the investment of his funds. That, notwithstanding the premises, the defendant carelessly, negligently, and fraudulently loaned of the plaintiff's said funds * * * to one Loren Dunbar the sum of seventeen thousand five hundred (\$17,500) dollars, taking therefor a note executed by the said Loren Dunbar and his wife, and secured by a second mortgage upon the farm then occupied by the said Loren Dunbar, which said real estate was, at the time, as was well known to the defendant bank and its officers, incumbered by prior mortgages to the amount in excess of the value of the land, and the said real estate was of no value in excess of the prior mortgages, which facts the defendant bank and its officers then and there well knew, or by the exercise of ordinary care and diligence might, at the time of making of said loan, have known. That the security taken for the said loan to the said Dunbar was, at the time it was taken, and is now, worthless, and the said makers of the said note are insolvent, and the security taken therefor is utterly worthless, whereby the plaintiff has been damaged in the sum of eighteen thousand (\$18,000) dollars, which amount is due the plaintiff, no part thereof having been paid."

After the reversal, the appellee filed an amended and substituted petition, in which he alleged an oral agreement with

appellant to loan his funds substantially as alleged in his or-iginal petition, and further alleged:

"That, notwithstanding the said oral agreement made with the bank at the time the funds were so deposited, in making all the loans hereinafter described, the defendant bank, through its officers and employees, did negligently, carelessly, and fraudulently make loans, and without the consent or approval of Arthur Marks, to various persons hereinafter described, and the said loans, so made, were each and all fraudulently made, for the purpose of carrying out some private purpose, and to the advantage of the defendant bank, to avoid loss to itself, and in direct violation of the oral agreement with the defendant made by the plaintiff, and not for the purpose of carefully, prudently, and honestly and with fidelity caring for plaintiff's funds, from which the plaintiff has suffered loss and damage more particularly set out."

The amendment to the amended and substituted petition filed at the time of trial contained the following allegations:

"* * * entrusted to the defendant divers sums of money, consisting of notes and moneys aggregating $52,000, for the purpose of making of the said funds safe and prudent investments, upon the good judgment and fidelity of said defendant bank. That the transactions occurred,—that is, the leaving of the funds with said bank,—with Harry W. Hill, then cashier, or Custer Couch, assistant cashier, who were both then officers and directors of said bank as aforesaid. That the plaintiff intended, and did believe, he was dealing with and having business transactions with the defendant bank, and not with either individual, who were then officers of said bank. That the said defendant bank, acting through its managing officers as aforesaid, accepted the said funds so entrusted and loaned, collected and reloaned the same from April, 1916, to and including the year 1921. That between the years 1919 and 1921, the said bank, acting through its officers and principal stockholders and directors, to wit, Harry W. Hill, loaned large sums of plaintiff's money to various persons, customers of said bank hereinafter stated, and the said officer of said bank so controlled the money thus loaned to the said persons that the said sums of money belonging to plaintiff were used to pay obligations owing by such persons which were

then past due to defendant bank, and the said defendant bank thereby, through its managing officers and agents, acquired the plaintiff's funds and appropriated the same to their own use, for the purpose of discharging for the benefit of said bank its bad and worthless loans and paper which it had made to various customers as hereinafter stated."

Appellee also alleged in said amendment:

"That, by reason of the acts herein stated, the defendant bank, through its managing officers as aforesaid, and in the manner aforesaid, through its fraudulent acts, has acquired and appropriated to its own use funds left with it for safe and prudent loans, to the plaintiff's damage."

This amendment and the instructions based thereon were challenged by timely and persistent attacks by the appellant. The court instructed the jury as follows:

"In his amendment to his amended and substituted petition, plaintiff seeks to recover upon the theory that, notwithstanding the fact, if it be a fact, that the defendant was not the agent of the plaintiff in the making of said loans for the plaintiff, but that Harry W. Hill was the agent of the plaintiff, in his individual capacity, in the making of the two loans involved in this cause of action to Loren Dunbar, then the plaintiff would still be entitled to recover, and upon this theory of recovery you are instructed as follows:

"In the making of the loan of ten thousand dollars of plaintiff's funds, made on or about March 24th, 1920, you are instructed that, if you fail to find that the defendant bank was the agent of the plaintiff, Pease, in the making of said loan, but you find that said loan was made by Harry W. Hill in his individual capacity, and you further find by a preponderance of the evidence that the said loan of ten thousand dollars, or some portion of it, was used for the purpose of taking up and paying off notes which the said defendant bank held against the said Loren Dunbar, and if you find that the said loan was made by the said Harry W. Hill in his individual capacity, and at the time of the making of said loan, the defendant bank, or its managing officers, knew that the proceeds of said loan were to be used for the purpose of taking up and paying off the notes of

the said Loren Dunbar due and owing to the said defendant bank, and that, subsequent thereto, the proceeds of said loan were in fact used to take up and pay off said notes of the said Dunbar, without the knowledge and consent of the plaintiff, Pally Pease, then such act and knowledge upon the part of the managing officer of the said bank, Harry W. Hill, acting in the dual capacity of agent for the said Pally Pease and managing officer of said bank, would constitute a legal fraud upon the plaintiff, Pally Pease, for which the defendant bank would be liable to the said Pally Pease for such sum or sums as you shall find, by a preponderance of the evidence, were used in discharging said notes so held by said bank, together with 6 per cent interest thereon from the date such sums as you shall find were so used and applied. If, however, you fail to so find, then the plaintiff would not be entitled to recover anything upon this portion of his claim and upon this theory.''

The question at this point is twofold: (1) Did the amended and substituted petition and the amendment thereto plead a new cause of action, or merely amplify the former issues; and (2) did it present a question for the jury as to the $10,000 loan, notwithstanding our pronouncement on the former appeal? If the amendment pleaded a new cause of action, the same was barred by the statute of limitations. The rule is well established that, if the amendment pleads a new and independent cause of action, it is to be treated as the commencement of a new suit, and if the period of limitation has intervened, the amendment is subject to demurrer. If, however, the amendment merely amplifies and enlarges the cause of action originally pleaded, it will be upheld, notwithstanding the statute of limitations. The cases are collected in *Plantz v. Kreutzer & Wasem,* 192 Iowa 333. See, also, *Emeny v. Farmers Elev. Co.,* 194 Iowa 282.

The original cause of action was predicated solely on the alleged negligence of the appellant, as agent of the appellee, in making improvident loans. The defense was that the appellant  was not appellee's agent, but that the man Hill acted for appellee individually in all of said transactions. It is true that the original petition and the amended and substituted petition alleged that the appellant ''carelessly, negligently, and *fraudulently*'' loaned appellee's funds. Ap-

pellee then specified the facts as to the particular loan, and alleged that it was utterly worthless, and that appellant and its officers then and there well knew, or by the exercise of ordinary care and diligence might, at the time of the making of said loan, have known, said facts. We think it cannot be successfully maintained that appellee's action was grounded on anything except negligence. It was a straight suit for damages against an alleged agent for negligence in the conduct of the principal's business. The manner in which the agent acted negligently is specified and set forth. True, there was a "voluntary issue" which was discussed on the former appeal, but it has no relation to the question involved at this point. We think it cannot be gainsaid that the amendment to the amended and substituted petition pleads a cause of action predicated upon alleged fraudulent misapplication and appropriation of appellee's funds by appellant. Negligence in handling a principal's funds by an agent furnishes a cause of action. Fraudulent misappropriation of a principal's funds for the agent's own use and benefit furnishes quite another and different cause of action. The original petition and the amended and substituted petition alleged that appellant acted "negligently, carelessly, and fraudulently." Is this a sufficient allegation to constitute a pleading of a cause of action for fraudulent misappropriation of funds? There are two sufficient reasons why it cannot be construed to be such a pleading: (1) The pleading proceeds to specify and set forth the manner in which appellant acted *negligently,* without any allegation tending to show fraudulent misappropriation of appellee's funds; and (2) the use of the word "fraudulently" was a mere legal conclusion, not germane to the acts specified in the pleading, and was wholly insufficient as a pleading of fraud.

As bearing on this proposition, see *Havner Land Co. v. MacGregor,* 169 Iowa 5; *Kerr v. Steman,* 72 Iowa 241; *Lynch v. Kerslake,* 186 Iowa 983; *Hoon v. Hoon,* 126 Iowa 391; *Mills & Co. v. Collins,* 67 Iowa 164; *Toovey v. Ayrhart,* 136 Iowa 694.

We therefore hold at this point that the amendment to the amended and substituted petition of the appellee was not a mere enlargement or amplification of the petition, but was the pleading of a new cause of action; and, it appearing that the same was barred by the statute of limitations, appellant's motion or demurrer thereto should have been sustained. It of necessity

follows that the court erred in submitting the question of appellant's liability for the first $10,000 Dunbar loan to the jury, as the former appeal disposed of that matter, and the new issue of misappropriation of the appellee's funds in connection with said loan was not properly in the case upon this trial.

IV.   The court also erred in submitting the question of the $7,500 involved in the Dunbar loan upon the theory of a fraudulent misapplication of funds by reason of a so-called "dual capacity" of the appellant.   Appellee's action sounds in negligence, and appellee must stand or fall on the theory of his claim that he was damaged by the careless and negligent acts of the appellant.

V.   For the reasons pointed out, a new trial must·be ordered.   Upon the same or a similar record, the court should withdraw from the jury the claim of $10,000 for the so-called first Dunbar loan.   As to the $7,500 of the Dunbar loan, liability can be predicated upon negligence only, and not upon fraud or misappropriation or misapplication of appellee's funds.   We reserve any pronouncement as to any questions presented on this appeal except those expressly determined herein.

On appellant's appeal the case is—*Reversed.*

On appellee's appeal the case is—*Affirmed.*

All the justices concur, except EVANS, J., who dissents to Division III hereof.