John POGGE and Loraine Pogge,
Appellees,

v.

FULLERTON LUMBER COMPANY,
Appellant.

No. 60788.

Supreme Court of Iowa.

April 25, 1979.

James L. Kramer, of Johnson, Burnquist, Erb, Latham & Gibb, P. C., Fort Dodge, for appellant.

Jerry C. Estes, of Kersten, Opheim, Carlson & Estes, Fort Dodge, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and ALLBEE, JJ.

REYNOLDSON, Chief Justice.

Following jury trial, judgment for plaintiffs John and Loraine Pogge was rendered against defendant Fullerton Lumber Co. for compensatory and exemplary damages resulting from breach of a contract for construction of a house. We reverse and remand for new trial.

There was substantial evidence from which the jury could have found the following facts.

Under a written contract dated May 21, 1973, Fullerton agreed to construct a residence for Pogges, who were to pay $20,363.24. Fullerton built the house and Pogges took possession in September, 1973.

The construction did not comply with the contract in several particulars. Two-by-eight floor joists were used instead of two-by-ten. The contract specified redwood exterior trim, oak doorsills, and 3⅓-inch insulation. Fullerton provided pine trim and doorsills and used only 2¼-inch insulation in the sidewalls. Kitchen counters were improperly installed. The garage was improperly braced and connected to the house. Drainage beds from the septic tank were poorly constructed. Windows and doors were not watertight. Siding was improperly applied.

July 14, 1975, Pogges filed a law action for damages for breach of contract. By amendment Pogges alleged defendant "knowing and willfully violated the contract with intent to damage the Plaintiffs herein. Therefore, in addition to the actual damages already alleged, Plaintiffs are entitled to an award of exemplary damages . . . ." By subsequent amendments Pogges ultimately demanded $46,900 actual damages and $75,000 exemplary damages.

The jury awarded Pogges $5400 in actual damages and $28,000 in exemplary damages.

In this appeal Fullerton raises three issues which we treat in the following divisions.

**I.** *Did plaintiffs furnish an adequate evidentiary basis to justify submission of compensatory damages to the jury?*

Trial court's instruction on compensatory damages relevantly provided:

[Y]ou can only allow damages, if any, as are shown by a preponderance of the evidence. You cannot allow more than the lesser of: (1) the difference between the fair and reasonable value of the premises at the time of delivery of possession in September, 1973, and its fair and reasonable value at that time had the house been constructed in accordance with the contract; or (2) the fair and reasonable cost of labor and materials required in September, 1973, to correct or repair any defects or omissions, if there were any, so that the Plaintiffs would have received a house which was constructed in accordance with the terms of the contract.

Under the evidence an award of actual damages cannot exceed $26,000 and it may be a lesser amount or none.

Fullerton objected to the instruction on the ground there was no evidence to show value of the house as actually constructed and therefore nothing on which to calculate the diminished value of the home. After carefully examining the transcript, we are convinced the objection should have been sustained.

Pogges' expert witness on construction testified that to "gut" the house to replace the insulation and joists and make other corrections would cost $46,592 at time of trial (less of course in 1973), but that it would be cheaper to build a new house. Another expert valuation witness placed the 1973 value of the house, if constructed in compliance with the contract, at $26,000.

He did not place a 1973 value on the house as actually built, but volunteered that as a lending institution appraiser he would have rejected it for loan purposes. Neither Pogges nor any one else gave an opinion on the actual 1973 value of the house as constructed. Other evidence disclosed the home was carried on the tax rolls at a market value of $33,000, and Pogges did not object until the value was raised to $50,420 as of January 1, 1977.

A colloquy between counsel and the court when the above objection was under discussion discloses the court had arrived at a maximum of $26,000 in actual damages on the basis of the value of the house had it been built in conformance with the contract. Trial court remarked the expert valuation witness had testified that as actually constructed the house "in all practical purposes has no value other than salvage; and by inference, salvage would be minimal." But the only reference the witness made to salvage was elicited by leading question and was stricken by the court upon proper objection.

In this case the parties apparently agreed to the basic formula for ascertaining damages contained in the above instruction. But there was no agreement to submit the formula even though evidence essential to its application was lacking. On use of the "reduction in value" rule vis-a-vis the "cost" rule and the effect of unreasonable economic waste in reconstruction, see *Busker v. Sokolowski*, 203 N.W.2d 301, 303–04 (Iowa 1972), and citations, and J. Calamari & J. Perillo, *The Law of Contracts* § 230, at 362–63 (1970).

Fullerton's objection to this instruction should have been sustained. Although this error alone requires a new trial, the remaining issues Fullerton raises are treated because they may recur.

II. *In this action for breach of contract should the issues of punitive damages have been submitted to the jury?*

Fullerton asserts that as a matter of law and pleading, punitive damages do not belong in this case and should not have been submitted to the jury. It argues breach of contract does not give rise to punitive damages without proof of independent tortious conduct. Fullerton also contends Pogges were required to plead malice as required by Iowa R.Civ.P. 96.

Pogges argue that

not only was there fraud in the performance of the contract, but also there was such a "high-handed disregard of duty" on the part of Fullerton that this case is a classic example of the type of contractual breach for which the additional deterrent of punitive damages is deemed necessary under the law.

Pogges rely on testimony of a former Fullerton employee that the floor joists and other substitutions of materials were made at the direction of a former yard manager and such substitutions had occurred in other projects.

Trial court submitted punitive damages to the jury. Instruction 18 provided in part:

You are instructed that the law of this State permits but does not require a jury to allow exemplary damages in certain cases if it is found by the jury that the act of the Defendant causing the injury complained of is intentional or is wanton and reckless. By wanton and reckless, as these terms are used in this case, is meant something more than negligence, but is meant that an act is done in such a manner and under such circumstances as to show heedlessness and an utter disregard and abandon as to what result may flow from the doing of an act or from the manner in which it is done.

Fullerton objected to this instruction on the ground that the evidence disclosed only a breach of contract, which "is always an intentional act by nature, and . . . does not give rise to punitive damages. The breach must be a separate, independent tort, and the allegations of the Plaintiffs' Petition do not conform nor comply with the requirements of Rule 96 . . . ." Fullerton objected to the use and definition of "wanton and reckless" when no such allegations appeared in the petition.

Trial court overruled Fullerton's objections, stating "[T]he punitive damage element was tried throughout the trial . . . ," and granted Pogges leave to amend to conform their petition to the proof. No amendment appears in the record.

A. As a general rule, exemplary damages are not a remedy for breach of contract. *Restatement of Contracts* § 342 (1932); 5 A. Corbin, *Corbin on Contracts* § 1077, at 438 (1964); 11 S. Williston, *Treatise on the Law of Contracts* § 1340 (3d ed. W. Jaeger 1968); 22 *Am.Jur.2d Damages* § 245 (1965); 25 *C.J.S. Damages* § 120 (1966). Some courts have stated this to be the rule regardless of motives prompting breach. *Roger Lee, Inc. v. Trend Mills, Inc.*, 410 F.2d 928, 929 (5th Cir. 1969) (Florida law); *Otto v. Imperial Casualty & Indemnity Co.*, 277 F.2d 889, 893–94 (8th Cir. 1960) (Missouri law); *Minick v. Associates Investment Co.*, 71 App.D.C. 367, 110 F.2d 267 (1940); *Wood v. Home Insurance Co.*, 305 F.Supp. 937, 938 (C.D.Cal.1969) (California law).

Several basic concepts lend support to this rule. It has been pointed out that extending the doctrine of punitive damages to the commercial field would introduce uncertainty and confusion into business transactions, and that substituted performance in the form of compensatory damages is an adequate remedy for the aggrieved party to a contract. Simpson, *Punitive Damages for Breach of Contract*, 20 Ohio St.L.J. 284, 284 (1959); Owen, *Punitive Damages in Products Liability Litigation*, 74 Mich.L.Rev. 1257, 1274 (1976). Considerable logic supports Justice Holmes' observation that "[i]f a contract is broken, the measure of damages generally is the same, whatever the cause of the breach." *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S.Ct. 754, 755, 47 L.Ed. 1171, 1173 (1903).

> Our system . . . is not directed at *compulsion* of *promisors* to *prevent* breach; rather it is aimed at *relief* to *promisees* to *redress* breach. . . . Perhaps it is more seemly for a system of free enterprise to promote the use of contract by encouraging promisees to rely on the promises of others, rather than by compelling promisors to perform their promises out of fear that the law will punish their breaches. In any event, this at least adds to the celebrated freedom to make contracts, a considerable freedom to break them as well.

Farnsworth, *Legal Remedies for Breach of Contract*, 70 Colum.L.Rev. 1145, 1147 (1970) (emphasis in original).

Nonetheless, it has been recognized that in contract actions

> punitive damages may be awarded upon proof of the requisite wantonness of behavior in the following types of cases: fraud; breach of promise of marriage; breach of contract of service by a public utility or common carrier; wrongful failure by a bank to honor a depositor's check; breach of contract of employment; breach of fiduciary duty; . . . and breach of contract amounting to or accompanied by an independent tort.

Owen, *supra*, at 1272. *See* Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change*, 61 Minn.L.Rev. 207, 220–40 (1977); 5 A. Corbin, *supra*, at 440–46. Even those courts linked above with the general prohibitory rule recognize exceptions when certain types of tortious conduct also are involved. *Compare Otto with Wallick v. First State Bank*, 532 S.W.2d 520, 524 (Mo.Ct.App. 1976); *Wood with Miller v. National American Life Insurance Co.*, 54 Cal.App.3d 331, 336, 126 Cal.Rptr. 731, 733 (1976); *Roger Lee with Singleton v. Foreman*, 435 F.2d 962, 971 (5th Cir. 1970) (Florida law).

Narrowing our focus to Iowa, this jurisdiction early ruled punitive damages were not recoverable for breach of contract. *Lacey v. Straughan*, 11 Iowa 258 (1860). Although by implication or by dicta we have indicated exceptions may exist in breach of warranty or contract cases, *Jacobson v. Benson Motors, Inc.*, 216 N.W.2d 396, 405 (Iowa 1974), *Engel v. Vernon*, 215 N.W.2d 506, 516–17 (Iowa 1974), our most definitive statement is found in *Kuiken v. Garrett*, 243 Iowa 785, 800, 51 N.W.2d 149, 158 (1952), where, quoting 15 *Am.Jur.Damages* § 273 (1938), the court noted:

"This rule [no punitive damages for breach of contract] does not obtain, however, in those exceptional cases where the breach amounts to an independent, wilful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression . . . . In some states they are recoverable for breach of contract where there has been some intentional wrong, insult, abuse, harshness, or such gross neglect of duty as to evince reckless indifference of the rights of others or where, and only where, the breach is accompanied with a fraudulent act."

In *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), we recognized the viability of a prayer for punitive damages in a count claiming damages for mental distress arising out of an alleged breach of contract for burial services for plaintiff's father. The same facts supported a tort claim in another count. The *Meyer* court, following *Amos v. Prom, Inc.*, 115 F.Supp. 127, 136–37 (N.D. Iowa 1953), and *Syester v. Banta*, 257 Iowa 613, 628–29, 133 N.W.2d 666, 676 (1965), in exploring the dimensions of conduct invoking an award for punitive damages, held such an award was permissible where defendant was guilty of malice, fraud, gross negligence, or an illegal act. It is not an essential element of malice that defendant's actual spite or wicked intent be demonstrated: An issue may be made by evidence of legal malice, which may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. *See White v. Citizens National Bank*, 262 N.W.2d 812, 817 (Iowa 1978); *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 859 (Iowa 1973).

From the above cases there emerge these guiding principles:

■ (1) Punitive damages cannot be recovered for breach of contract;

■ (2) Punitive damages may be recovered when the breach also constitutes an intentional tort, or other illegal or wrongful act, if committed maliciously;

■ (3) It is sufficient if the malice is only legal malice, that is, committed or continued with a willful or reckless disregard of another's rights;

■ (4) The intentional tort or other illegal or wrongful act may occur at the time of and in connection with the breach; but

(5) A wrongful act in this context is not committed merely by breaching a contract, even if such act is intentional.

■ B. Returning now to the case before us, we have serious reservations whether Pogges' petition alleged anything other than an intentional breach. Of course, it is not fatal that they failed to use the word "malice." In our view, Iowa R.Civ.P. 96 ("A party intending to prove malice to affect damages, must aver the same.") was not intended to make "malice" a talismanic *sine qua non* for a punitive damage claim. Rather, allegations of fact which if proven would show malice will suffice. *Compare* Iowa R.Civ.P. 96 *with Gensburg v. Field & Co.*, 104 Iowa 599, 605, 74 N.W. 3, 5 (1898).

We are aware, of course, that upon remand Pogges may be allowed to amend their petition. *See* Iowa R.Civ.P. 88, 89; *Gookin v. Norris*, 261 N.W.2d 692, 694 (Iowa 1978); *Pease v. Citizens State Bank*, 210 Iowa 331, 340, 228 N.W. 83, 87 (1930); Fed. R.Civ.P. 15(c). If so, upon retrial sufficient evidence may be adduced on the issue of exemplary damages to warrant its submission. Trial court's instructions should follow the guidelines provided in this opinion.

III. *Should trial court have permitted Fullerton to show its offers to mitigate Pogges' damages?*

Fullerton attempted to show numerous post-construction negotiations. Pogges objected to this evidence on the ground the testimony related to offers of compromise. Portions of this information eventually were elicited, but Fullerton was never permitted to show that in addition to its offer to refund Pogges' $16,000 payment on the house, it offered to remove the house and leave the foundation and basement.

Pogges make no attempt to defend trial court's rulings but argue in their brief the error, if any, was harmless.

▮ The offer of settlement or compromise exclusionary rule is designed to exclude this evidence only when it is tendered as an admission of weakness of the other party's claim or defense, not when it is tendered to prove a fact other than liability. *See Suntken v. Suntken,* 223 Iowa 347, 358, 272 N.W. 132, 138 (1937); Fed.R.Evid. 408; *McCormick's Handbook of the Law of Evidence* § 274, at 664 (2d ed. E. Cleary 1972); 31A *C.J.S. Evidence* § 286 (1964) (offer of compromise may be admissible as relevant circumstantial evidence of a fact other than that of liability). The exclusionary rule protected Fullerton and could be waived by it. *See* IV J. Wigmore, *Evidence in Trials at Common Law* § 1061, at 34–35 (J. Chadbourn rev.ed. 1972).

In this case Fullerton was entitled to present evidence in mitigation of Pogges' claim for punitive damages. 25 & 25A *C.J.S. Damages* §§ 127, 159 (1966) (defendant may rebut, or offer in mitigation, evidence on such issues as malice); 22 *Am. Jur.2d Damages* § 263 (1965) (all circumstances surrounding transaction supporting claim for punitive damages, including any mitigating circumstances, may be considered). In *Redman v. Department of Education,* 519 P.2d 760, 767–69 (Alaska 1974), the court held an employer's offer to relocate an improperly dismissed employee, even though it may have constituted an offer of compromise, was admissible because it was offered for purposes of mitigation. Fullerton's announced purpose in submitting this evidence was the same.

For reasons stated in division I, we reverse the judgment entered in district court and remand for new trial in conformance herewith.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who concurs in divisions I and II and the result.