Donald F. PIRKL, Appellant,

v.

NORTHWESTERN MUTUAL INSUR-
ANCE ASSOCIATION, Appellee.

No. 83–271.

Supreme Court of Iowa.

May 16, 1984.

As Corrected May 16, 1984.

Rehearing Denied June 8, 1984.

John T. Nolan and Marc B. Moen of
Rate, Nolan, Bohanan, Moen & Lucas,
Iowa City, for appellant.

Robert N. Downer of Meardon, Sueppel,
Downer & Hayes, Iowa City, and F.W.
Tomasek of Tomasek, Vogel & Charnetski,
Grinnell, for appellee.

Considered by REYNOLDSON, C.J., and
UHLENHOPP, HARRIS, LARSON, and
CARTER, JJ.

CARTER, Justice.

Both the insured and the insurer appeal
from the judgment of the district court
following a jury trial to recover actual and
punitive damages based on the insurer's
failure to pay a theft loss claim.

The case involves the claim of plaintiff,
Donald F. Pirkl, a Johnson County farmer,
who contends that the defendant North-
western Mutual Insurance Association

breached its contract of insurance and acted in bad faith when it failed to pay his claim for a reported theft of approximately sixty-nine feeder pigs. After hearing the evidence, the jury awarded plaintiff $1228.20 in compensatory damages and $12,282.00 in punitive damages. Upon defendant's motion for judgment notwithstanding the verdict, the trial court set aside the award of punitive damages and entered judgment for the amount of compensatory damages only.

On appeal, the plaintiff asserts that (1) this court should recognize the existence of an independent claim in tort by an insured against an insurer for bad faith failure to pay a first party claim; and (2) that there was substantial evidence offered in support of all the elements of such a claim in the present case thereby rendering the trial court's ruling on defendant's motion for judgment notwithstanding the verdict erroneous. On its cross-appeal, the defendant insurer asserts that (1) the untimeliness of plaintiff's notice of loss should preclude any recovery under the policy, and (2) the district court erred in its instructions to the jury concerning the effect of lack of prejudice upon its affirmative defense of untimely notice of claim.

The record discloses that on or about July 22, 1980, the plaintiff believed that some of his feeder pigs were missing from a field where they had been kept. He notified the Johnson County Sheriff's Office, and a deputy was soon dispatched to investigate the disappearance. There were few visible signs that a theft had occurred. The ground was hard packed and did not show tire tracks. A gate to the enclosed area where the pigs had been located was closed, but plaintiff believed that the latch was attached differently (locked from the outside rather than the inside) from the way he had last fastened it. It also appeared that a strand of electric fencing was missing from the top of the gate.

The particular field is located in close proximity to an entrance to Interstate 80, a circumstance claimed to provide easy access to plaintiff's field while at the same time attracting minimal attention to cars and trucks because of a usually high amount of traffic in the area. Although he could locate no direct evidence of theft, the deputy sheriff concluded that the pigs had been stolen. This conclusion was based largely on the fact that several other livestock thefts had occurred recently in Johnson, Washington and Iowa Counties.

The plaintiff had been insured by the defendant mutual insurance association for over twenty years at the time of this incident. His policy contained a provision requiring that a claim of theft loss be filed within 24 hours of the underlying occurrence. It also required that on theft claims there should be "substantial proof" that a loss was caused by theft. Inventory shortages and other mysterious disappearances were not embraced within the coverage of the policy absent independent evidence of theft.

Plaintiff did not notify the defendant association of his theft claim until July 28, 1980. By this time, he had sold the remaining feeder pigs and believed he had ascertained with reasonable certainty the number of pigs which were missing. Upon being presented with the claim, the defendant association sent an adjuster to visit the farm who advised the plaintiff that in the absence of physical evidence that a theft had occurred the company must disallow the claim.

After plaintiff's attorney had written the association and received a reply reaffirming the denial of the claim, plaintiff initiated this action seeking compensatory damages for a theft loss alleged to be covered by defendant's policy and for punitive damages based upon an alleged bad faith refusal to pay the claim. Trial resulted in the aforementioned verdicts, motions and ruling of the district court. We consider the claims presented on appeal separately. Additional facts which are deemed necessary to our decision are considered in connection with the legal issues presented.

I. *Existence of Independent Tort Action for Insurer's Bad Faith Failure to Settle First Party Claims.*

At the outset, plaintiff urges us to clarify the matter of whether this jurisdiction recognizes an independent tort based upon an insurer's bad faith in failing to settle a casualty loss claim with its own insured. The defendant association contends that we unequivocally rejected such a theory of liability in *Brown Township Mutual Insurance Association v. Kress*, 330 N.W.2d 291, 298 (Iowa 1983). We do not believe our holding in *Kress* is that clearly defined with respect to this issue.

While we noted in *Kress* that we had in other cases declined to recognize such a theory of recovery, it appears that in those cases in which the issue had previously been considered, the claims which the insurer failed to pay were as a matter of law "fairly debatable." *See, e.g., Higgins v. Blue Cross of Western Iowa and South Dakota*, 319 N.W.2d 232, 236 (Iowa 1982); *M–Z Enterprises, Inc. v. Hawkeye Security Insurance Co.*, 318 N.W.2d 408, 414 (Iowa 1982).[1] We also inferred that this was the situation in *Kress* in denying the right to recover punitive damages in that case.

As a result of our previous approach to claims of this nature, our law has been shaped on the basis of identifying the type of situation which does not permit recovery on an independent tort theory rather than identifying the type of situations, if any, which would support recovery on such a theory. Because of the apparent frequency with which this type of claim is being asserted, we conclude that some effort should be made to clarify its status under our law.

The plaintiff urges that there is no logical basis for recognizing a cause of action in tort for acts of a liability insurer which cause harm to its insured as a result of the insurer's bad faith in representing the insured's interests against a third party claim[2] and in not also recognizing a similar cause of action against a casualty insurer who causes harm to its insured through the bad faith handling of a property loss claim. He cites *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 687, 271 N.W.2d 368, 374–75 (1978) as supporting the analogy between the two types of insurance claims.

We are not nearly as persuaded as the Wisconsin court in *Anderson* that the rationale which recognizes an ancillary duty of a liability insurer to exercise good faith in the settlement of third party claims is equally applicable and of equal importance when an insured seeks payment of a claim for a property loss from his own casualty insurer.

The relationship between the insurer and its insured in the two situations is markedly different. In the former situation, a clear fiduciary duty arises which places an affirmative duty on the insurer to investigate the claim and take such additional affirmative action as is required in the best interests of its insured. In the casualty insurance situation, the relationship between insurer and insured is for many purposes at arms length. The insurer has no clearly defined duty of investigation and may require the insured to present adequate proof of loss before paying the claim. The two parties are on opposite sides of the issue rather than being partners on the same side as in the liability insurance situation.

1. In *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35, 41 (Iowa 1982), we answered a certified question from a federal court declining to recognize a private cause of action for unreasonable insurance practices which violate certain statutes regulating insurance companies which do business in this state. In that decision, we expressly left open the question of whether we recognized the existence at common law of an independent tort action for an insurer's bad faith failure to settle first party claims.

2. We recognized an independent tort liability for breach of a liability insurer's duty to act in good faith in representing an insured against a third party in *Higgins,* 319 N.W.2d at 235; *Kooyman v. Farm Bureau Mutual Insurance Co.,* 315 N.W.2d 30, 33–34 (Iowa 1982); and *Koppie v. Allied Mutual Insurance Co.,* 210 N.W.2d 844, 846–48 (Iowa 1973). In *Long v. McAllister,* 319 N.W.2d 256, 262 (Iowa 1982), we refused to recognize such a claim by a third party claimant against an insurer for bad faith in failing to settle a claim against its insured.

If the issue were simply a theoretical one of whether the nature of this type of claim is one which should properly be recognized as a tort action we would be inclined to respond in the negative. Clearly, however, that is not the real issue presented. The real issue is whether punitive damages may be recovered in some circumstances for denial of a first party casualty loss claim by an insurer for other than legitimate reasons.

■ The defendant association urges that such failure is only a breach of contract, and we should adhere to the rule that punitive damages are not recoverable for that type of claim. We thoroughly reviewed the law surrounding recovery of punitive damages in contract actions in *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 918–20 (Iowa 1979). We determined in *Pogge* that in considering whether punitive damages should be permitted, the nature of the conduct is more significant than the legal label which is attached to the conduct. We recognized that in situations which satisfied the elements of a claim for intentional infliction of emotional distress an act which is a breach of contract may also support a claim for punitive damages. *Id.* at 920. We concluded that

> [I]n exploring the dimensions of conduct invoking an award for punitive damages, ... such an award was permissible where defendant was guilty of malice, fraud, gross negligence, or an illegal act.

*Id.* In *Kooyman*, 315 N.W.2d at 34 (Iowa 1982), we recognized that in the area of bad faith settlements of third party liability claims by a liability insurer not all acts constituting bad faith will support an award of punitive damages. We implied, however, that such damages are recoverable in situations involving "positive misconduct of a malicious, illegal, or an immoral nature."

■ Based upon the considerations discussed in *Pogge* and *Kooyman*, we are unable to accept the defendant's contention that in no instance will the denial of a valid claim by a casualty insurer support a claim for punitive damages in addition to the recovery of the loss which should have been paid under the policy. We conclude, however, that such recovery may not be predicated on action which involves no more than upsetting the justified expectations of the insured.

■ Tested by these principles, we find that the trial court in the present case was correct in setting aside the jury's award of punitive damages in its ruling on defendant's motion for judgment notwithstanding the verdict. The evidence of theft submitted to the defendant association by plaintiff was certainly not strong. At several places in the record, plaintiff himself is quite equivocal as to his own beliefs in this regard. There is no claim of fraud in defendant's denial of the claim. There is no indication in the record of any acts by the defendant from which it can be inferred that it acted with malice in denial of the claim. We affirm the district court on plaintiff's appeal.

II. *Defendant's Appeal.*

Defendant asserts on its appeal that the trial court erred in not also setting aside the award of actual damages in response to its motion for judgment notwithstanding the verdict. This is based upon its theory that plaintiff's notice of the theft loss was untimely as a matter of law based upon the policy requirements. In the alternative, defendant contends on its appeal that the trial court erred in instructing the jury that failure to give notice of the theft within the time required by the policy would not preclude recovery if the insurer was not prejudiced as a result of the delay.

We reject both contentions advanced by defendant.

■ Both of defendant's contentions on appeal are based on the contention that notice of the theft "within twenty-four hours of the time of loss" is a condition precedent to any recovery for theft loss under the policy. The fact that a certain performance is required on the part of one of the contracting parties does not necessarily render it a condition precedent to the

enforcement of any performance on the part of the other party to the agreement. *Union Story Trust & Savings Bank v. Sayer,* 332 N.W.2d 316, 322 (Iowa 1983). In the *Sayer* case, we said:

> [I]n order to predicate the discharge of one of the contracting parties upon breach of condition by the other, the party claiming discharge must show the condition breached constituted the entire agreed exchange by the other party, or was expressly recognized in the bargain as a condition for the other's performance.

*Id.* While the conditions of the policy in the present case provide that notice of theft should be given the insurer "within twenty-four hours of the time of loss," this is not expressly made a condition precedent to the payment of the claim. Accordingly, we hold that the trial court correctly instructed the jury that if no prejudice resulted to the insurer from the failure to comply with this provision, plaintiff's right to recover under the policy would not be defeated. It cannot be said on the present record that prejudice resulted to the insurer as a matter of law. Indeed, no indication of actual prejudice has been suggested. We affirm the district court on defendant's appeal.

AFFIRMED ON BOTH APPEALS.