774 F.2d 321
 Alvin ENNEN, Bruce Ennen, Bart Ennen, Charles Thomas, Larry
Hagery, Randall Bonde, Dave Hanna, and Wilfred
Hanna, Appellees,
v.
PUBLIC SERVICE MUTUAL INSURANCE COMPANY, a corporation, Appellant.
 No. 84-2389.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1985.
Decided Oct. 7, 1985.
 
 Richard J. Sapp, Des Moines, Iowa, for appellant.
 Glenn L. Norris, Des Moines, Iowa, for appellees.
 Before LAY, Chief Judge, ARNOLD, Circuit Judge, and REGAN,* Senior District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Plaintiffs sued their insurance company, Public Service Mutual Ins. Co., for failure to pay insurance proceeds upon the death of their Arabian horse. The jury awarded plaintiffs $200,000 compensatory damages and $800,000 punitive damages. Defendant appeals, arguing principally that the jury instructions were erroneous for various reasons. We affirm the award of compensatory damages. The award of punitive damages was apparently based upon the alleged bribery of a witness. The bribery issue was not submitted to the jury on proper instructions, and therefore we reverse and remand for a new trial on punitive damages.
 
 I.
 
 2
 Plaintiffs were owners of an Arabian horse, Firebaal. Bruce Ennen owned the horse when it was a foal in 1978. When the horse was nine months old, he sold it to Jon Simonson for $4,000 and the reservation of six to 12 breeding rights. Ennen then bought the horse back from Simonson in May 1980 for $8,000. Whether breeding rights were reserved by Simonson is unclear from the record. Tr. 163, 432. In the four months following the repurchase of the horse the following events occurred. (In recounting the facts we state the case in the light most favorable to plaintiffs, who won the jury verdict.) Ennen sold a one-half interest in the horse to Mark Daggy for $100,000, who insured his interest for that amount. Ennen then insured the one-half interest in the horse owned by himself, his father, and his brother (they had been given shares), with the Rhulen Insurance Agency, an agent for the defendant, for another $100,000. To substantiate the value for the insurance company, Ennen stated that Firebaal had started winning halter classes as a weanling and that the owners were putting on a large promotional and advertising campaign. In August Ennen informed the Rhulen Agency that Daggy was no longer an owner and that he, Ennen, had syndicated a one-half interest to five of his friends (plaintiffs in this case) for $200,000. He asked that the insurance be increased to $400,000. In September 1980, the horse died unexpectedly. Plaintiffs filed proof-of-loss forms to collect the insurance proceeds.
 
 
 3
 Shortly after the horse died, the Rhulen agency was contacted by Daggy and his attorney, Lawrence Scalise. They claimed that Daggy had information that the insurance claim was fraudulent. The Rhulen agency hired a special fraud investigator, Harold Glass, to handle the investigation. He contacted Scalise on October 15, 1980. Scalise stated that Daggy had information that the horse claim was fraudulent and wanted approximately $16,000 for his information. (Daggy claimed he had incurred expenses in approximately this amount in connection with the horse.) Scalise and Glass agreed to meet on December 10, 1980, to work out some sort of arrangement. Daggy and Scalise then met with an FBI agent, Barett Root, and the United States Attorney for the Southern District of Iowa, Roxanne Conlin, on October 20, 1980, to discuss Daggy's claim that the insurance claim was fraudulent. As a result of Daggy's statements the FBI initiated an investigation into the death of the horse and the insurance claim.
 
 
 4
 The December meeting was attended by Joan Barkley of the Rhulen agency, Glass, Tom Lewis (Daggy's attorney and an associate of Scalise), and Root. At the meeting Daggy informed the Rhulen agency that Bruce Ennen had planned to defraud the insurance company by buying an Arabian horse with good blood lines for an inexpensive price, inflating the value with phony syndication sales, and then killing the horse for the insurance money. Daggy testified that he had given the same information to the FBI during the October meeting. Tr. 2060. At some point during the meeting, a written agreement was prepared, and Barkley signed it. The agreement stated that the Rhulen Agency would pay Daggy $16,750 for his full and complete cooperation in providing information and/or testimony in any civil or criminal investigations. The money was not to be paid until the investigations or litigations were completed.
 
 
 5
 Plaintiffs sued to collect the money on the insurance policy after they had received no offer of payment from the insurance company for several months. Issues were submitted to the jury on breach of contract, punitive damages for "malicious breach of contract," the individual claim of Bruce Ennen for intentional infliction of mental distress, and punitive damages for intentional infliction of mental distress. Plaintiffs argued that the agreement with Daggy was bribery to induce him to testify falsely that Bruce Ennen killed the horse in order to collect the insurance money. Witness bribery is a crime under Iowa law, Iowa Code Sec. 720.4 (1979). Bruce Ennen claimed he suffered mental distress as a result of the FBI investigation defendant had promoted by the bribery. At trial defendant argued it had insufficient information regarding the claim at the time suit was filed and accused Bruce Ennen of killing the horse. The company argued that the agreement with Daggy was legitimate, and that the money was paid as reimbursement for the expenses Daggy had incurred during his ownership of the horse. Defendant's affirmative defenses, that plaintiffs had misrepresented the number of horse shows the horse had won and the amount of money that had actually been invested in the horse by syndication, were submitted to the jury. There was sufficient expert testimony to support the jury's finding as to the value of the horse when it died.
 
 
 6
 The jury returned a verdict for the plaintiffs, awarding them compensatory and punitive damages. It also awarded Bruce Ennen compensatory and punitive damages for intentional infliction of emotional distress. Defendants filed a motion for judgment notwithstanding the verdict or a new trial. The District Court vacated the awards for intentional infliction of emotional distress, holding that defendant's conduct was outrageous, but that Bruce Ennen suffered only embarrassment, not severe emotional distress. The compensatory damages for breach of contract and punitive damages for "malicious breach of contract" were left intact. Defendant appeals.
 
 II.
 
 7
 Defendant argues that the award of compensatory damages should be reversed because there was error in the jury instructions with respect to the affirmative defense of misrepresentation and the proper proof of loss. Defendant asserted as an affirmative defense that the plaintiffs had misrepresented the number of shows won by Firebaal and the amount of money that had actually been invested by the plaintiffs as a result of syndication. Instructions # 18, fraudulent misrepresentation, and # 19, false swearing, required defendant to prove specific intent to deceive. Defendant contends that where misrepresentation is pleaded in avoidance of a contract, proof of knowledge of the misstatement or concealment is sufficient, without regard to specific intent to deceive, if the misrepresentations materially increased the risk of loss or influenced the insurer's decision to accept the risk. When the instructions are read as a whole, we believe that there is no error. Instruction # 22 states that intent to deceive is shown when the speaker has actual knowledge of the falsity of his representations or makes them with reckless disregard as to whether they are true or false. The instructions, therefore, did not place any additional burden of proof on the defendant.
 
 
 8
 Defendant also argues that the instructions were erroneous because they required defendant to prove its affirmative defenses of misrepresentation by a preponderance of the clear, convincing and satisfactory evidence, instead of a simple preponderance of the evidence. The terms "clear, convincing, and satisfactory" refer to the character and nature of the testimony, not the quantum of proof required, and are used in Iowa fraudulent-misrepresentation cases. Hall v. Crow, 240 Iowa 81, 92-93, 34 N.W.2d 195, 201 (1948); Ley v. Metropolitan Life Ins. Co., 120 Iowa 203, 208-09, 94 N.W. 568, 569-70 (1903); Iowa Uniform Jury Instructions (Civil) No. 26.2, Fraudulent Misrepresentation (1983). The terms are used to describe the evidence needed to overcome the presumption in favor of honesty. There were no errors in these instructions.
 
 
 9
 The last argument raised by the defendant in regard to compensatory damages is that the jury should have been given a more specific explanation as to the meaning of the policy statement that "no loss shall become payable until thirty days after satisfactory proof of loss has been received by the agency." It argues that its requested instruction # 12 properly defined sufficient proof of loss, the company's rights of investigation, and the time within which any payment would become due.
 
 
 10
 The instructions given were sufficient to give the jury guidance in its decisions. They did not lead the jury to believe that the mere submission of a one-page proof-of-loss statement would be sufficient information, as alleged by the defendant. The jury could reasonably determine for itself what would be satisfactory proof of loss. The defendant's proposed instruction stated that satisfactory proof of loss included other information reasonably requested by the company, and that the time period for determination of payment had not yet passed at the time suit was filed. The trial court properly rejected the proposed instruction as argumentative. There was no error in the instructions given the jury with respect to compensatory damages.
 
 III.
 
 11
 The jury awarded $50,000 in punitive damages to Bruce Ennen for intentional infliction of emotional distress, which was later overturned by the trial court, and $800,000 in punitive damages to the plaintiffs on the claim for "malicious breach of contract." The issue is whether jury instruction # 10,[1] intentional infliction of emotional distress, instruction # 26,[2] introduction to punitive damages, and instruction # 27,[3] the punitive-damage instruction, were erroneous.
 
 
 12
 Defendant argues that there is no support for the claim that it caused or controlled the FBI investigation, and that this theory of liability should not have been submitted to the jury as a basis for the award of punitive damages. We agree that there is insufficient evidence to support this theory. It is true that promotion of the FBI investigation was mentioned only in instruction # 10, the emotional distress instruction, and that this instruction was essentially voided when the trial judge vacated the award of damages based on it. However, it is entirely possible that the jury, because of this instruction, also considered the alleged promotion of the FBI investigation to have been malicious in connection with the breach-of-contract aspect of the case and awarded punitive damages for that reason. This is particularly so because of instruction # 26, the introduction to punitive damages, which mentioned both intentional infliction of emotional distress and "malicious breach of contract." Once the thought was planted in the jury's mind that the alleged improper promotion of an FBI investigation could be punished, the error could not be easily cured by the separate instruction (# 27) on punitive damages for influencing a witness.
 
 
 13
 Plaintiffs argue that the jury's verdict for intentional infliction of emotional distress, although vacated for insufficient "proof of damages," would nevertheless support the award of $800,000 punitive damages. We disagree. The award was vacated because Bruce Ennen, the only plaintiff who claimed emotional distress, failed to prove the necessary harm, an essential element of the cause of action. This case does not come within the scope of Westway Trading Corp. v. River Terminal Corp., 314 N.W.2d 398, 404 (Iowa 1982), which holds that where harm has been established and actual damages have been shown, but damages are not awarded for one reason or another, punitive damages will not be barred.
 
 
 14
 The main issue in this appeal is whether instructions # 26 and # 27 were erroneous. Instruction # 26, the introduction to punitive damages, stated that the plaintiffs were seeking punitive damages on their claim for "malicious breach of contract." Instruction # 27 set out the plaintiffs' theory that the defendant had committed an illegal act by attempting to influence the testimony of Daggy in order to create grounds to dispute their claim, a violation of the Iowa witness-bribery statute, Iowa Code Sec. 720.4 (1979).
 
 
 15
 Defendant argues that the plaintiffs are not entitled to punitive damages because the jury instructions incorrectly stated the law. It argues that Iowa law does not allow recovery for a "malicious breach of contract," and that a finding by the jury of an independent tort or illegal or wrongful act, in addition to a breach of contract, was required to support the award of punitive damages. Defendant further argues the wording of the punitive-damage instruction was incorrect. We agree with defendant's arguments.
 
 
 16
 The Supreme Court of Iowa in Pogge v. Fullerton Lumber Co., 277 N.W.2d 916 (Iowa 1979), stated that "punitive damages cannot be recovered for breach of contract" but "may be recovered when the breach also constitutes an intentional tort, or other illegal or wrongful act, if committed maliciously." Id. at 920. The court explained that in the typical contract case punitive damages are inappropriate and counter-productive since the law of contract favors encouraging parties to rely on promises freely negotiated and that the primary use of legal compulsion in the form of punitive damages would tend to substitute the coercive power of the courts for the freedom of the marketplace, an undesirable result. Id. at 919.
 
 
 17
 While it is clear that under Iowa law punitive damages cannot be awarded simply because a party intentionally broke a contract (contract breaches are in some sense always intentional), even if the breach was deliberate, malicious, or opprobrious, it does not necessarily follow that punitive damages are never in order in a contract action. There are instances when the act of contract-breaking may also be an independently actionable civil wrong sounding in tort. See, e.g., Meyer v. Nottger, 241 N.W.2d 911 (Iowa 1976) (breach of contract for burial services for plaintiff's father was also held to be intentional infliction of emotional distress). The Iowa court has also recognized the tort of bad faith in certain narrowly defined situations in which a liability insurer violates its duty to defend the insured. See Kooyman v. Farm Bureau Insurance Co., 315 N.W.2d 30 (Iowa 1982). But Iowa has declined to extend the bad-faith tort to third-party liability claims (Long v. McAlister, 319 N.W.2d 256 (Iowa 1982)) or to first-party casualty claims such as this one (see, e.g., Pirkl v. Northwestern Mut. Ins. Ass'n, 348 N.W.2d 633 (Iowa 1984)), at least when such claims are "fairly debatable" (id. at 635). The Iowa court explains its reluctance to extend the bad-faith tort to first-party casualty-insurance situations by noting that in the liability contract the insurer has a clear fiduciary duty to its insured to investigate and defend claims against the insured which are within the policy, while in the casualty-insurance situation the insurer and insured deal at arm's length (in theory, at least) and are on opposite sides of any potential dispute which may arise under the policy. Pirkl, 348 N.W.2d at 635. This analysis is consistent with the general rule announced in Pogge, in that it justifies punitive damages for breach of an insurance contract only when the breach also constitutes an additional wrongful act, the breach of a fiduciary duty. The court did not rule out punitive damages in every instance of breach of a casualty-insurance contract, but made clear that when the claim was based on mere loss of the insured's justified expectations in a fairly disputable claim, punitive awards would not be appropriate. Pirkl at 636.
 
 
 18
 Here, the failure of defendant to settle the casualty claim was the result of a fair dispute over the merits of the claim. Failure to pay upset plaintiff's expectations that the claim would be paid. But the failure to pay was not itself tortious, or illegal, or in bad faith, under the principles announced by the Iowa Supreme Court in Pirkl. Therefore, instruction # 26, which authorized an award of punitive damages for "malicious breach of contract," and instruction # 27, to the extent that it allowed the jury to award punitive damages for intentional or malicious breach, were erroneous.
 
 
 19
 Here, it was not the breach itself, but other conduct by the defendant which the plaintiffs relied on in their claim for punitive damages. Under Iowa law, this additional conduct, alleged witness bribery, would be sufficiently malicious to justify the award of punitive damages. However, instruction # 27 does not set out the elements of the crime of witness bribery nor does it require a specific finding of bribery as a predicate to an award of punitive damages. The plaintiffs argue that the instruction is not erroneous because under Iowa law the elements of the independent tort or illegal act need not be submitted to the jury. They argue that it is enough that the court determine that there was sufficient evidence to support the submission of the issue of punitive damages based on malice alone. Under plaintiffs' theory neither the court nor the jury would be required to make an actual finding of an independent tort, illegal act, or other wrong in order to justify punitive damages.
 
 
 20
 The cases cited by the plaintiffs do not support their argument. In Pogge the court expressed doubt that the plaintiffs' petition alleged anything other than an intentional breach of contract, but noted that on remand the complaint could be amended. In two other cases cited there is no indication that the punitive damages were not based on a specific independent wrongful act found by either the jury or the court, and in a third case the defendant failed to object to the submission of punitive damages in the trial court.[4] Since Pogge requires that punitive damages be based on an independent tort or illegal act, logically the court by directed verdict or the jury by verdict must find the tort or act existed before punitive damages can be awarded.
 
 
 21
 Instruction # 27 does state that it is only when the breach of contract constitutes an intentional wrong, or other illegal act, committed with malice, that punitive damages may be recovered. The instruction is still erroneous because it fails to set out properly the elements of witness bribery. The instruction states the jury may award punitive damages if they find an agreement was made "for the wrongful purpose of influencing Mark Daggy's testimony." This implies that if any type of agreement was made to influence Daggy's testimony the jury could award punitive damages. It assumes that any "influence" was necessarily wrongful. This is not the law in Iowa.
 
 
 22
 A violation of the bribery statute, Iowa Code Sec. 720.4 (1979),[5] occurs when a bribe is made to a potential witness "with the intent to improperly influence" his or her testimony. Merely offering money to the witness to induce him or her to tell the truth is not a violation of Sec. 720.4. State v. Halleck, 308 N.W.2d 56, 59 (Iowa 1981). There was no violation of Sec. 720.4 unless the money offered was intended to induce Daggy to lie or shade his testimony. Here, instruction # 27 draws no distinction between a legitimate payment made to encourage a witness to testify at all, or to tell the truth, and a payment made to a witness to persuade him to lie or color his testimony. The statute was not intended to prohibit the use of paid informants. It is for the jury to decide whether the payment was made with the intent to influence the witness improperly.
 
 
 23
 We reverse the award of punitive damages and remand the issue for retrial because the instructions did not properly set out the elements of the statutory violation of bribing a witness. On remand the court should explain to the jury that mere failure to pay the claim is not a basis for punitive damages. Instead, they must find that defendant bribed Daggy. The jury should be required to find the elements of the crime of bribery: (1) a payment was offered to Daggy; (2) defendant believed that Daggy might be a witness in a judicial proceeding; and (3) the bribe was made with the intent to influence Daggy's testimony improperly. Halleck, 308 N.W.2d at 58. A definition of intent to influence improperly should be set out in the instructions. The jury should be informed that improperly influencing means to ask a witness to lie or to shade or color his or her testimony in a certain way. It should be explained that not all influence is improper; for example, offering restitution if a witness tells the truth is not a violation of the statute. Id. at 59. The jury should then be instructed that if they find a violation of the statute they may award punitive damages.
 
 
 24
 The award of compensatory damages is affirmed. The award of punitive damages is reversed, and the cause remanded for new trial on that issue.
 
 
 25
 It is so ordered.
 
 
 
 *
 The Hon. John K. Regan, Senior United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 Instruction # 10 states Ennen's claim that the "defendant committed an outrageous act in the conduct of its investigation by causing a witness to give false testimony in order to promote an FBI investigation of his insurance claim."
 
 
 [2]
 Instruction # 26 states the "plaintiffs seek exemplary or punitive damages on their claims for malicious breach of contract and intentional infliction of emotional distress."
 
 
 [3]
 Instruction # 27, "Influencing witness--punitive damages," states:
 "Under the law of Iowa, it is only when a breach of contract constitutes an intentional wrong, or other illegal act, committed with malice, as defined in these instructions, that punitive damages may be recovered. Here, in addition to the claim for intentional infliction of emotional distress, plaintiffs allege that defendant committed such an act by attempting to influence the testimony of Mark C. Daggy in order to create grounds to dispute their claim.
 Evidence has been received as to an alleged agreement made by Joan Barkley, as agent for defendant, to pay money to Mark C. Daggy for his full cooperation in civil or criminal investigations or litigations of this matter. You are instructed that this evidence was received solely for the bearing, if any, which it might have upon the plaintiffs' right to claim punitive damages in connection with their claim for breach of contract.
 If you find that plaintiffs have shown by a preponderance of the evidence that an agreement or offer of money was in fact made, and was made for the wrongful purpose of influencing Mark Daggy's testimony, you may, but need not, award plaintiffs punitive damages in connection with their claim for breach of contract...."
 
 
 [4]
 In Hall v. Montgomery Ward & Co., 252 N.W.2d 421 (Iowa 1977), the cause of action was based on a violation of the malicious threat statute, and malice was an element of the cause of action. There is no indication that the elements of the statute were not submitted to the jury. The dispute on appeal was whether punitive damages would be a double recovery since malice was part of the cause of action
 Sebastian v. Wood, 66 N.W.2d 841 (Iowa 1954), involved a car accident as a result of the defendant's drunk driving. In support of its holding that punitive damages could be awarded in a negligence action for failure to control a car the Supreme Court noted that if the defendant had killed the plaintiffs he would have been liable for manslaughter, which is defined to include wanton and reckless disregard for other persons. The very same conduct which constituted the underlying cause of action--drunk driving--also made punitive damages appropriate.
 Kuiken v. Garrett, 243 Iowa 785, 51 N.W.2d 149 (1952), is the last case cited by the plaintiffs. In that case the suit was based on contract, but the plaintiffs also recovered punitive damages. The complaint alleged interference with possession and quiet enjoyment of land. The defendants argued that the plaintiffs had not actually been ousted so there was no basis for the suit. The court held that if the landlord acted with malice in disturbing the tenants' quiet enjoyment of the land compensation may be given. On appeal defendants argued that no punitive damages should have been allowed for breach of contract. The Supreme Court held that the defendants had failed to raise the error in the trial court and on this ground affirmed the award of punitive damages. The court then went on and in dicta noted that the rule against punitive damages in contract actions did not apply where the breach was also an independent tort. Although the exact interpretation of these dicta is unclear, the court appears to have allowed punitive damages because the breach of contract was abusive and harsh. We do not believe this represents a holding properly transferable to the present context of a fairly debatable insurance claim. To the extent that Kuiken is inconsistent with the express holdings in Pogge (decided 27 years later), it should be disregarded.
 
 
 [5]
 The statute reads in full:
 A person who offers any bribe to any person who he or she believes has been or may be summoned as a witness or juror in any judicial or arbitration proceeding, or any legislative hearing, or who makes any threats toward such person or who forcibly or fraudulently detains or restrains such person, with the intent to improperly influence such witness or juror with respect to his testimony or decision in such case, or to prevent such person from testifying or serving in such case, or who, in retaliation for anything lawfully done by any witness or juror in any case, harasses such witness or juror, commits an aggravated misdemeanor.