NORTHWESTERN NATIONAL
INSURANCE CO., Appellee,

v.

Corrina POPE, Appellant,

Roger Pope,

The Establishment, Inc., an Iowa
corporation, Appellant,

Small Business Administration, et al.

No. 84–1706.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1985.

Decided May 23, 1986.

Rehearing Denied June 26, 1986.

Lloyd E. Humphreys, Cedar Rapids, Iowa, for appellant.

J. Richard Johnson, Cedar Rapids, Iowa, for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Corrina Pope[1] and The Establishment, Inc. appeal from the district court's reduction of damage awards returned by the jury on their negligence and breach of contract claims against their insurance company, Northwestern National Insurance Company. Iowa law governs the case. On appeal, Pope and The Establishment contend (1) that the district court erred in holding Iowa law limits their recovery to

---

1. Roger Pope, once named as a party herein, assigned his interest in The Establishment, Inc.

to Corrina. For present purposes, he may be disregarded.

the amount due under the insurance policy; and (2) that the district court erred in computing the amount due under the policy. We modify and affirm the decision of the district court.

Pope was owner and manager of The Establishment, a Cedar Rapids bar. The Establishment, which first opened for business in early 1979, was located in leased premises in the basement of a building. Prior to the opening Pope incurred significant expenses for remodeling and improving the premises, which had previously been unfinished. Under the lease appellants were obligated to surrender all improvements to the landlord upon termination of the lease.

Pope insured The Establishment by obtaining the property insurance policy at issue from Northwestern National in the names of Corrina Pope and The Establishment, Inc. The face amount of the policy was $75,000.00; it covered the "actual cash value" of the contents of the bar, as well as appellants' "use interest" in the betterments and improvements. The policy insured against all direct losses caused by fire, vandalism, or malicious mischief.

In April, 1980 The Establishment was damaged by vandalism. Sometime between May, 1980 and August, 1980, Corrina Pope submitted proofs of loss to Northwestern National detailing and substantiating her claim as to the extent of her property losses. In January, 1981, without having made any payment on appellants' claim, Northwestern National filed an interpleader action in Iowa state court, naming among the defendants Corrina Pope, The Establishment, Inc. and twenty of appellants' creditors. Pope and The Establishment were evicted sometime in 1981 for nonpayment of rent. Corrina Pope later filed a petition in bankruptcy and spent some time in a hospital, evidently for emotional distress.

The IRS removed the interpleader action to federal district court, and in June, 1981 Northwestern National deposited $42,000.00 for damage to The Establishment's contents with the court in purported satisfaction of its obligations under the policy. Corrina Pope and The Establishment filed the present action against Northwestern National as an answer and counterclaim to Northwestern's interpleader.

In the counterclaim appellants alleged, in pertinent part, the following theories of recovery: malicious breach of the contract of insurance; tortious bad faith refusal to settle the insurance claim; and negligent failure to provide adequate insurance coverage. Pope requested punitive damages; damages for loss of profits, demise of the business and emotional distress; reimbursement of attorneys' fees she had become liable for during the insurance company's processing of her claim; and an award for additional property losses (including damage to improvements and betterments) which she alleged had been within the policy's coverage.

The district court granted summary judgment in the interpleader action, directing that Northwestern National's $42,000.00 be paid to the Small Business Administration. The court dismissed, at least in part, appellants' tortious bad faith failure to settle cause of action, holding that such a tort is not recognized in Iowa. The negligence and breach of contract counts proceeded to trial before a jury. At the close of the evidence, the district court instructed the jury that it could award appellants compensatory and punitive damages if it found Northwestern National liable on either of appellants' remaining theories of recovery. The court instructed the jury that it could consider appellants' financial losses, mental suffering, property damage, and attorneys' fees in determining the amount of the compensatory award. Instruction No. 25 permitted the jury to award punitive damages if it found breach of contract or negligence of Northwestern National was "wanton or reckless," that is "heedless and [in] utter disregard" of the rights of plaintiffs. The verdict form did not require the jury to differentiate among the various items of actual damage. The jury returned a $150,000.00 compensatory damage award and a $500,000.00 punitive

damage award against Northwestern National.

Northwestern National then moved for judgment notwithstanding the verdict or a new trial. In passing on the motion for judgment n.o.v., the district court held that the jury's award could not be sustained on the basis of appellants' negligence claim because appellants had not introduced sufficient evidence on the negligence claim to justify submission to the jury. Relying on *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 918–20 (Iowa 1979), and *Brown Township Mutual Insurance Association v. Kress*, 330 N.W.2d 291, 298–300 (Iowa 1983), the district court also concluded that under Iowa law appellants could not recover for punitive damages, consequential financial damages, mental suffering, or attorneys' fees on their breach of contract theory. (As noted, the court had previously held that Iowa does not recognize an independent tort action for an insurer's bad faith failure to settle a claim made by its own insured.) Accordingly, the district court granted the motion for judgment n.o.v. in part, disallowing the punitive damage award and reducing the jury's $150,000.00 award to the amount the court thought appellants were due under the terms of the policy.[2] The court denied the motion for a new trial.

On appeal, Pope and The Establishment do not dispute the district court's conclusions regarding their negligence claim, but they do contest the other holdings leading to the reduction of the awards.

**1. Consequential and punitive damages.**

■ In Iowa, when a casualty insurer breaches its insurance contract by failing to pay a valid claim made by its own insured, the measure of damages is ordinarily the amount due under the contract. *Kress*, 330 N.W.2d at 298–300. As a general matter, punitive damages are not available, nor, apparently, are Iowa courts to

award consequential damages, at least in the absence of evidence the parties to the contract intended otherwise. *Id.* It appears Iowa does not at this time recognize an independent tort action for an insurer's bad faith failure to settle a first party claim for property damage.

We are not nearly as persuaded ... that the rationale which recognizes an ancillary duty of a liability insurer to exercise good faith in the settlement of third party claims is equally applicable and of equal importance when an insured seeks payment of a claim for a property loss from his own casualty insurer.

The relationship between the insurer and its insured in the two situations is markedly different.... In the casualty insurance situation, the relationship between insurer and insured is for many purposes at arms length. The insurer has no clearly defined duty of investigation and may require the insured to present adequate proof of loss before paying the claim. The two parties are on opposite sides of the issue rather than being partners on the same side as in the liability insurance situation.

If the issue were simply a theoretical one of whether the nature of this type of claim is one which should properly be recognized as a tort action we would be inclined to respond in the negative.

*Pirkl v. Northwestern Mutual Insurance Association*, 348 N.W.2d 633, 635–36 (Iowa 1984). *Cf. New Hampshire Insurance Co. v. Christy*, 200 N.W.2d 834, 845 (Iowa 1972) (attorneys' fees may be recovered against an insurer who has "acted in 'bad faith or fraudulently or [who has been] stubbornly litigious' ").

The Northwestern National policy does not expressly or by implication cover emotional distress, attorneys' fees, or consequential financial damages. Moreover, the policy limits the insurer's liability for losses

---

**2.** At this juncture we note that the district court did not have the benefit of *Pirkl v. Northwestern Mutual Insurance Association,* 348 N.W.2d 633 (Iowa 1984), hereinafter discussed in text. Had *Pirkl* been available the district court's submis-

sion of the case and its treatment of the motion for judgment n.o.v. might well have been somewhat different, but on the record here presented the ultimate result would have been the same.

from any one occurrence to $75,000.00. Since in the interpleader action Northwestern National already paid $42,000.00 on appellants' claim, the maximum amount appellants could recover under the policy on their counterclaim would be $33,000.00. There was, therefore, a serious question raised as to whether either of the jury's awards could withstand Northwestern National's motion for judgment n.o.v.

Appellants rely on an exception recognized in Iowa to the general measure of damages as set forth above. Under this exception, regardless of whether the underlying cause of action against the casualty insurer lies in contract or in tort, punitive damages (and, presumably, consequential damages) can be awarded to the insured "in situations involving 'positive misconduct of a malicious, illegal, or an immoral nature,'" or if the insurer is "'guilty of malice, fraud, gross negligence, or an illegal act.'" *Pirkl*, 348 N.W.2d at 636 (quoting *Kooyman v. Farm Bureau Mutual Insurance Co.*, 315 N.W.2d 30, 34 (Iowa 1982), and *Pogge*, 277 N.W.2d at 920). On the other hand, punitive and consequential damages will not be available when the validity of the insured's claim under the policy is "fairly debatable," or when the bad faith alleged involves "no more than upsetting the justified expectations of the insured." *Id.* at 635, 636; *see also Ennen v. Public Service Mutual Insurance Co.*, 774 F.2d 321, 326 (8th Cir.1985).

Applying the reasoning of the Iowa cases to the case at hand, we cannot say the district court erred in disallowing the jury's award of punitive and consequential damages. In so holding, we recognize that we must consider the evidence in the light most favorable to appellants, and must uphold the decision of the jury if reasonable minds could differ as to the conclusions to be drawn from the evidence. *Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir.1979).

■ We note that, with regard to the contents losses, it took at least until June, 1980 for appellants to submit the requisite

documented proof of loss to Northwestern National. Over the next months, appellants and Northwestern National negotiated regarding the valuation of the loss; Northwestern National also attempted to determine which, if any, of appellants' creditors would be legally entitled to the proceeds. Appellants changed attorneys twice during the fall of 1980, doubtless thereby prolonging the proceedings. In short, the delay in settling the contents loss, while extremely regrettable, does not in this case establish the fraud, malicious or illegal conduct, or other positive misconduct necessary to permit an award in excess of policy provisions. Although appellants point to various actions taken by Northwestern National agents which they contend show bad faith on the part of the insurer, we believe these actions go no farther than illustrating the Iowa Supreme Court's observation that the relationship between insured and casualty insurer is sometimes of necessity at arms length and adversarial.

■ Nor can we find the requisite malice or impropriety in Northwestern National's handling of the betterments and improvements losses. The Northwestern National policy states that betterments and improvements are insured only if they are "not otherwise specifically covered." The policy further states that if betterments and improvements are repaired or replaced at the expense of others for the use of the insured, Northwestern National will not be liable under the policy. Appellants' landlord made a claim for these same betterments and improvements losses under a casualty insurance policy he maintained with Iowa National Insurance Company. Iowa National ultimately paid the landlord on his claim, and the landlord made repairs. The Establishment, under the management of Corrina Pope, actually reopened for business for a brief period after the repairs had been made. Thus, Northwestern National contended it had no liability for improvements and betterments; and, although this position did not prevail in the district court

proceedings, we believe, based on the policy's language, that the issue was "fairly debatable." Accordingly, the claims for punitive and consequential damages should not have been submitted to the jury under any theory advanced by appellants and supported by evidence. *See Higgins v. Blue Cross*, 319 N.W.2d 232, 236 (Iowa 1982); *M–Z Enterprises, Inc. v. Hawkeye-Security Insurance Co.*, 318 N.W.2d 408, 415 (Iowa 1982).

We conclude that in the circumstances of this case the district court did not err in disallowing punitive and consequential awards.

**2. Damages under the policy.**

■ The Northwestern National policy allowed for recovery of the "actual cash value" of the damaged property. According to the jury instructions, "actual cash value," under Iowa law, is "the original cost of an item less depreciation, if any." In computing the amount due appellants under the policy, the district court valued the contents losses at $42,659.91, even though the replacement value of the items had been established to be $48,107.61, the amount set forth in the second proof of loss. The district court used the lower figure because it believed the parties had agreed upon $42,659.91 as a reasonable estimate of the depreciated value of the property damaged.

We have found no evidence that appellants agreed the property had depreciated significantly; we find evidence only of Northwestern National's insistence that depreciation had occurred. We conclude the jury could properly have found the actual cash value of the property to have been essentially the full replacement cost. Taking into account the $42,000.00 award already made in the interpleader action for contents losses, we hold that the district court's additional $659.91 award for these losses should be expanded to the full amount of the difference between $48,-107.61 and $42,000.00. *Cf. Britven v. Occi-*

*dental Insurance Co.*, 234 Iowa 682, 685, 13 N.W.2d 791, 793 (1944) (where casualty loss occurs, "the insurer is obligated to make fair compensation ... for such loss.... No hard and fast rule can be laid down by which the amount of such indemnity can be determined in all cases").

■ With regard to the betterments and improvements losses, we note that the district court valued these at $26,243.00, but that the court then deducted $3,622.00, the amount attributable to damaged mirrors. The district court observed that the policy excluded coverage for "glass (other than glass building blocks) constituting part of a building, structure, or outside sign." Appellants argue that the district court erred in excluding any award for damage to mirrors. Although we may agree that mirrors are more than glass, we do not feel at liberty to disagree with the district court's view that as part of the building the mirrors were excluded from policy coverage.

The parties raise other questions and arguments, all of which we have fully considered but need not discuss in detail. They have no significant impact on the result reached.

Because of the modest error in computation of damages heretofore detailed, we remand with directions to modify the judgment to reflect an award to appellants consistent with this opinion. So modified, the judgment with interest and costs will stand affirmed. Each party will pay its own costs on appeal.