STATE of Iowa, Appellee,

v.

Roger R. HALLECK, Appellant.

No. 66418.

Supreme Court of Iowa.

July 15, 1981.

Lawrence F. Scalise and Ann Fitzgibbons of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina and Harold Young, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

McGIVERIN, Justice.

Defendant Roger R. Halleck appeals from his conviction, after trial to the court, of tampering with a witness in violation of section 720.4, The Code 1979. He contends the evidence was insufficient to support the conviction and that the court incorrectly interpreted the statute. We affirm.

Defendant is a practicing attorney in Marshalltown. He represented John Congdon on a charge of second-degree theft of a television-stereo unit. In October 1979 Congdon rented the unit from William Fry of Sound World, in Marshalltown. He agreed to pay $21 per week for 78 weeks for a total of $1638. Congdon paid $21 down and took possession of the set. He allegedly left Marshalltown with the set shortly thereafter, and failed to make further payments. The set was never recovered. Fry, manager of Sound World, investigated and made a complaint to the county attorney. The county attorney then filed a second-degree theft charge against Congdon. Congdon was arrested in Kansas City and extradited to Marshall County. Defendant Halleck was appointed by the court to represent him.

Congdon indicated to Halleck that Congdon's father might be willing to make restitution to Sound World for the set. Halleck made two attempts to persuade the Marshall County prosecutor to dismiss the theft charge or recommend probation for Congdon if restitution was made to Sound World. The prosecutor rejected the proposal.

On April 8, 1980, Halleck telephoned Fry. Halleck told Fry he wanted to avoid Congdon being sent to prison. He said there was a possibility that a cashier's check could be obtained, apparently from Congdon's father, to cover the remainder due on the set, which was $1617, if Sound World was willing to recommend to the county attorney that she drop the charges against Congdon. Halleck asked Fry to consider the offer and Fry agreed that he would.

Fry contacted the county attorney and discussed the offer Halleck had made. The county attorney decided to investigate the matter and arranged to have Fry phone Halleck and record the conversation.

On April 10 Halleck went to Sound World to discuss the possibility of restitution. He said he believed he would be able to get a cashier's check and wanted to be sure charges were dropped if Sound World received the money. No agreement was reached.

Fry phoned Halleck on April 11 from the county attorney's office. This call was recorded and a transcript of it was introduced into evidence at trial. The following is a portion of that conversation:

FRY: I guess I just want . . . to clarify everything in my mind . . . .

\*     \*     \*     \*     \*     \*

HALLECK: The proposal is basically that we would deliver a certified check to you for one thousand six hundred and some odd dollars and we would have your solid assurance that you would ... tell the County Attorney's office in no uncertain terms that you are not interested at all in prosecuting this matter [and] that you've received compensation for your lost merchandise .... [If you are subpoenaed to testify at trial] what I would expect would be that you would, uh, from the witness stand tell the jury that you received compensation, uh, and to admit that you were served with a subpoena to appear on behalf of the State ... uh, ... in effect that you folks aren't really pressing this matter.

\*   \*   \*   \*   \*   \*

HALLECK: And, uh, Bill, I do want you to understand very clearly that, uh, uh, you know I am not one hundred, I can't give you one hundred percent assurance that my man would in fact be able to cough up the money but he tells me he can, uh, and if you folks give me an indication that it's likely worth our while, we'll proceed to make an effort and then get back to you ....

The trial court found that Halleck was guilty of tampering with a witness under section 720.4. He was fined $750 for this aggravated misdemeanor. §§ 720.4, 903.1.

■ Halleck challenges the trial court's interpretation of section 720.4 and also the sufficiency of the evidence. The interpretation of the statute is a question of law for the court. *State v. Hellwege*, 294 N.W.2d 689, 691 (Iowa 1980). Our scope of review for the sufficiency of evidence to support the fact finder's conclusions is well settled. *E. g., State v. Sharpe*, 304 N.W.2d 220, 225–26 (Iowa 1981); *State v. Holderness*, 293 N.W.2d 226, 235 (Iowa 1980); *State v. Jones*, 289 N.W.2d 597, 600 (Iowa 1980); *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). We consider the evidence as a whole in the light most favorable to the prosecution. *Holderness*, 293 N.W.2d at 235. Evidence is sufficient if a rational fact finder could find guilt beyond a reasonable doubt. *Jones*, 289 N.W.2d at 600.

Section 720.4 as relevant here provides: "A person who offers any bribe to any person who he or she believes has been or may be summoned as a witness ... in any judicial ... proceeding ... with the intent to improperly influence such witness ... with respect to his or her testimony ... in such case ... commits an aggravated misdemeanor." There are three elements to the charge of witness tampering under section 720.4 in this case. The State had to prove that Halleck (1) offered "any bribe," (2) to Fry, who he believed might be a witness in a judicial proceeding, and (3) with the intent to "improperly influence" Fry's testimony. § 720.4. We now turn to the elements and the sufficiency of the evidence to support them.

I. *Offer of a bribe.* The first element is that the defendant must offer a bribe. The offer alone is sufficient. The parties disagree on the interpretation of the word "bribe." Halleck contends that since Sound World was only offered that to which it was already entitled—$1617—there is no bribe. He says that an offer of restitution is not a bribe. We disagree when the offer of restitution is on condition that Fry and Sound World change their position and testimony from favoring prosecution to not pressing prosecution of the charge.

■ An offer of a bribe under section 720.4 is an offer of anything of value or benefit to induce another to act improperly. *See Western Mutual Insurance Co. v. Baldwin*, 258 Iowa 460, 471, 137 N.W.2d 918, 924 (1965); *Dishon v. Smith*, 10 Iowa 212, 221, (1859); § 722.1. In Halleck's case the parties agree that he offered to Fry to make restitution of $1617 to Sound World. Sound World was missing a valuable television set. Eventual restitution from Congdon was a possibility. § 907.12 (restitution after sentence and probation). However, restitution from Congdon was not immediately possible because he was indigent, unemployed and in jail awaiting trial on the theft charge. An offer of a cashier's check immediately for the full amount of Sound

World's pecuniary loss was certainly something of value. The evidence was sufficient to find an offer of a bribe.

We caution that we are not discouraging restitution by defendants charged with crimes. An offer of restitution, standing alone, is not a crime. We encourage restitution. However, we believe the legislature intended to make it a crime to offer restitution where the person making the offer attempts to improperly influence a victim-witness's testimony. §§ 720.3 (offering inducement to another to commit perjury is suborning perjury), 720.4, 722.1 (offer of anything of value pursuant to agreement that it will influence witness is bribery).

II. *Person to be summoned as a witness.* The second element of witness tampering under section 720.4 is that the defendant believe the person bribed may be called as a witness in a judicial proceeding. The evidence sufficiently supports the trial court's finding on this element. Fry was the manager and agent of Sound World and personified it. He had rented the set to Congdon. He was also listed as a witness on the minutes of testimony attached to the information charging Congdon.

III. *Intent to improperly influence such witness.* The final element is the specific intent element. As stated above, offering restitution to a victim-witness is not, standing alone, a crime. An offer of restitution is a crime under section 720.4 only if the State proves that the offer was made "with the intent to improperly influence such witness."

■ We must consider what the legislature meant by "improperly influence." To improperly influence a witness is not limited to asking a witness to lie. *Cf.* § 720.3 (suborning perjury to offer inducement to have witness make a false statement). An improper influence includes offers of a bribe to "persuade the witness to shade or color his testimony in a certain way, without actually lying." 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 445 (1979); *see State v. Ventola,* 122 Conn. 635, 640, 191 A. 726, 728, 110 A.L.R. 578, 581 (1937); *State v. Liss,* 145 Minn. 45, 51, 176 N.W. 51, 53 (1920). Merely offering restitution if the witness tells the truth, however, is not prohibited. *See Model Penal Code and Commentaries,* § 241.6 at 169 (1980).

In Halleck's case the court concluded that even though Halleck did not intend to commit a crime, he did intend to improperly influence Fry as a witness. The court found that Halleck "did intend to direct the nature, character, mode and manner of the testimony." The issue is close, but our limited review finds sufficient evidence to support the trial court's finding.

The transcript of the third conversation of April 11 between Halleck and Fry shows that if restitution were made Halleck would expect Fry to tell the fact finder that Sound World "received compensation" and, if subpoenaed, inform the fact finder of the subpoena. This would be the truth. Asking Fry to tell the truth would not be a violation of section 720.4. However, Halleck also said that Fry should tell the jury "in effect that you folks aren't really pressing this matter." Telling the jury that Sound World is not "pressing" the prosecution seems to contradict the earlier position of Fry and Sound World which caused the county attorney to file the theft charge. Regardless of whether such testimony would contradict the earlier position, it would still be improper if Fry's testimony about not pressing the prosecution was induced by Halleck's offer of money. There was no evidence whether, even if restitution were made, Fry would truthfully tell the jury that he and Sound World were not "really pressing this matter." Fry may have felt, as did the prosecutor, that a person who pays $21 on a $1638 television and then leaves the state with the set should still be prosecuted for theft even though restitution has been made.

. Halleck testified that, although he made the statement asking Fry to tell the jury that Sound World was not pressing the prosecution, he did not intend to influence Fry to testify that he was not pressing prosecution if, in fact, he preferred to pursue it. Other witnesses testified about Hal-

leck's honesty and integrity in the community. Halleck and others also testified that he often has trouble accurately expressing his thoughts. Several lawyers testified that Halleck would not intentionally do something against the law.

Nevertheless, we find sufficient evidence to support the trial court's finding that Halleck intended to improperly influence Fry to testify that he was not pressing the prosecution because restitution was made. This shows an intent to improperly influence Fry with respect to his testimony.

We therefore affirm.

AFFIRMED.