# IN THE COURT OF APPEALS OF IOWA

No. 22-0192
Filed August 30, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHAD REESE BENNETT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marion County, Dustria A. Relph,

Judge.


        Chad Bennett challenges the sufficiency the evidence supporting his

convictions and the district court's refusal to recuse herself.  **AFFIRMED.**


        Erin M. Carr of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney

General, for appellee.


        Considered by Ahlers, P.J., Badding, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**AHLERS, Presiding Judge.**

Chad Bennett was charged with sexual abuse of a ten-year-old girl.  To maintain confidentiality, we will call the girl Holly, though that is not her real name.[1]  In conjunction with the charges, a no-contact order was issued prohibiting Bennett from contacting Holly personally or through third parties.  Despite the no-contact order, while Bennett was in jail awaiting trial on the sexual-abuse charges he and his mother hatched a plan to try to get Holly to recant her allegations against Bennett.  The plan was hatched via text messages[2] exchanged between Bennett (from jail) and his mother (who was not in jail).  The plan called for the mother to contact Holly to try to get her to say Bennett did not sexually abuse her.  After the plan was put into action and then discovered, the State charged Bennett with stalking,[3] conspiracy to commit stalking,[4] tampering with a witness,[5] and conspiracy to tamper with a witness.[6]  Bennett's mother was charged similarly as a co-defendant.

Bennett waived his right to a jury trial in favor of a bench trial.  The district court found Bennett guilty on all four counts.[7]  He appeals.  He contends the

---

[1] We used a random-name generator to come up with the name Holly.

[2] The evidence at trial established that the jail housing Bennett had a communication system that enabled inmates to use a kiosk in the jail to send electronic messages to people outside jail.  The people on the outside could then communicate back to inmates via electronic message using the same system.  For ease of reference, we will refer to these electronic messages as text messages.

[3] *See* Iowa Code §§ 708.11(2), .11(3)(a) (2020) (a class "C" felony as a third offense).

[4] *See* Iowa Code §§ 706.1(1), .3(2) (a class "D" felony).

[5] *See* Iowa Code § 720.4 (an aggravated misdemeanor).

[6] *See* Iowa Code §§ 706.1(1), .3(3) (an aggravated misdemeanor).

[7] Bennett was tried jointly with his mother, who did not waive her right to a jury trial. The mother's case is not before us in this appeal.

evidence is insufficient to support the guilty findings on all four counts and the district court erred by refusing to recuse herself.

## I.	Sufficiency of the Evidence

We begin our discussion of Bennett's sufficiency challenge by rejecting two themes that permeate his arguments on appeal.  The first theme is that Bennett did not commit the crimes charged because all he did was try to get Holly to testify to the "truth."  Of course, Bennett's concept of truth is a narrative in which Bennett did not sexually abuse Holly—the opposite of the narrative Holly told authorities that resulted in the sexual-abuse charges against Bennett.  We reject Bennett's suggestion that he is somehow insulated from criminal culpability for his efforts to try to get Holly to change her narrative simply by labeling his preferred narrative as "the truth."  *See State v. Halleck*, 308 N.W.2d 56, 59 (Iowa 1981) ("To improperly influence a witness is not limited to asking a witness to lie.").

The second theme we reject is Bennett's portrayal of isolated pieces of evidence from the record as fact.  We reject this theme because it asks us do the opposite of what our standard of review requires us to do.  In reviewing the sufficiency of the evidence in a bench trial we view the district court's findings as we would a jury verdict, meaning we are bound by the district court's finding of guilt if it is supported by substantial evidence.  *State v. Warren*, 955 N.W.2d 848, 857 (Iowa 2021).  Evidence supporting a guilty finding is substantial if, when viewed in the light most favorable to the State, it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.  *Id.*  As the standard of review requires us to view the evidence in the light most favorable to the State, we reject Bennett's efforts to have us view the evidence in the light most favorable to him.

With this standard of review in mind, we address the sufficiency of the evidence supporting each of the four charges of which Bennett was found guilty.

**A.     Stalking**

On the stalking charge, the State charged Bennett as a principal or as an aider and abettor.  As a result, the State was required to prove:

1.      Bennett or someone he aided and abetted purposefully engaged in a course of conduct directed at Holly that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened; and

2.      Bennett knew or should have known that a reasonable person would feel terrorized, frightened, intimidated, or threatened by the course of conduct.

*See* Iowa Code § 708.11(2).  As it relates to the facts of this case, "course of conduct" means maintaining a visual or physical proximity to a person without legitimate purpose on two or more occasions.  *See id.* § 708.11(1)(b), (d).

Viewed in the light most favorable to the guilty finding, the evidence establishes that Bennett and his mother exchanged text messages in which they put together the plan to have the mother contact Holly to try to get her to say Bennett did not sexually abuse Holly.  Preying on Bennett's belief that Holly was religious, the plan included telling Holly she would go to hell if she didn't tell the truth—again, with the understanding that Bennett's version of the truth was that he did not sexually abuse Holly.  The plan also included having the mother entice Holly to talk to her by giving Holly specific types of candy that Bennett knew Holly favored and offering to let Holly see Bennett's kittens.  The plan included details about opportunities the mother should engineer to run into Holly.  Those

opportunities included trying to find Holly at a city-sponsored Halloween event, driving around the neighborhood where Holly lived around school-closing time, hanging out at Holly's neighbor's house (Holly is a neighbor to Bennett's brother) until Holly could be spotted, and trying to get Bennett's nephew (a neighbor to Holly) to offer to buy a treat at a local coffee shop if Holly would come with him while the mother waited at the coffee shop to talk to Holly and try to capture a video or audio recording of Holly saying Bennett did not sexually abuse her.

Evidence established that Bennett's mother implemented the plan. Holly testified that Bennett's mother, who Holly did not know before the mother told Holly who she was, approached Holly five to ten times. Holly provided details about two of those contacts, during which the mother gave Holly candy (the exact type of candy referenced in the text messages between Bennett and his mother) and gave Holly a note that, among other things, said, "God bless you." Holly became frightened by these interactions with the mother—who Holly referred to as "the creepy lady"—and told her own mother about them. Holly's mother told Holly to avoid any future contact with Bennett's mother, so, when Holly would see her, she would run away. Nevertheless, Holly saw Bennett's mother driving very slowly past Holly's house several times, with Holly running away each time. Various contacts and attempted contacts were confirmed not only by Holly's testimony but also by Bennett's mother's testimony, the testimony of a handyman working at Holly's house, and the text messages exchanged between Bennett and his mother.

In the face of this evidence, Bennett contends the State failed to prove either element of the offense. He launches three attacks on the evidence. First, he contends the mother had a legitimate purpose to contact Holly because all the

mother was doing was encouraging Holly to tell the truth. As previously noted, we reject this contention. Bennett's use of the word "truth" equates to having Holly say Bennett did not sexually abuse her—the opposite of the information Holly provided to law enforcement. A reasonable fact finder could find that having his mother contact the key witness against him in violation of a no-contact order to try to get the witness to change her narrative is not a legitimate purpose.

Second, Bennett contends the contact between his mother and Holly would not cause a reasonable person to feel terrorized, frightened, intimidated, or threatened. We disagree. A reasonable fact finder could easily conclude that a reasonable ten-year-old child would feel terrorized, frightened, intimidated, or threatened when the mother of the man the child accused of sexually abusing her approaches with candy and talks to her about changing her accusations against the accused.

Third, Bennett contends that he did not know, nor should he have reasonably known, that a reasonable person would feel terrorized, frightened, intimidated, or threatened by the contact from his mother. Again, we disagree. A reasonable fact finder could conclude that the no-contact order caused Bennett to know that any type of contact with Holly was prohibited and that contact in violation of the no-contact order for the purpose of trying to get her to change her account of events would cause a reasonable ten-year-old child in that situation to feel terrorized, frightened, intimidated, or threatened.

The district court's finding that Bennett committed the crime of stalking is supported by substantial evidence.

**B.      Conspiracy to Commit Stalking**

To prove conspiracy to commit stalking based on the facts of this case, the State had to prove:

1.    Bennett agreed with his mother

    a. that one or both of them would commit the crime of stalking; or

    b. one or both of them would attempt to commit the crime of stalking;

2.    Bennett entered the agreement with the intent to promote or facilitate the crime of stalking;

3.    Bennett or his mother committed an overt act; and

4.    Neither Bennett nor his mother were a law enforcement agent investigating the offense or assisting law enforcement agents in the investigation when the conspiracy began.

*See* Iowa Code § 706.1; Iowa Crim. Jury Instructions 600.1.

Bennett contends the State failed to meet its burden to establish these elements because the evidence does not establish that Bennett or his mother stalked or attempted to stalk Holly, there was a legitimate purpose for Bennett's mother to contact Holly, and there was no agreement to stalk Holly because Bennett merely wanted her to tell the truth.  These contentions repeat the arguments Bennett advanced in support of his challenge to the sufficiency of the evidence of his stalking conviction.  For the reasons we rejected those arguments regarding stalking, we also reject them with respect to conspiracy to commit stalking.  The district court's finding that Bennett conspired to commit stalking is supported by substantial evidence.

### C.     Tampering with a Witness

To prove Bennett guilty of tampering with a witness, the State was required to prove that Bennett or the person he aided and abetted (i.e., his mother):

1.    offered a bribe;

2.    to a person who Bennett believed had been or may be summoned as a witness in a judicial proceeding;

3.    with the intent to improperly influence the witness's testimony.

See Iowa Code § 720.4; State v. LaPointe, 418 N.W.2d 49, 51 (Iowa 1988).

Viewed in the light most favorable to the State, the evidence establishes that Bennett put together a three-page letter that he intentionally wrote to be understood by a child.  Bennett sent the letter to his mother, and she received it.  The letter lays out a narrative in which Holly is portrayed as having been tricked into lying when she accused Bennett of sexually abusing her.  The letter goes on to explain ways in which Holly may get in trouble if she repeats her initial narrative and how she can't get in trouble if she refuses to answer any questions.  The text messages between Bennett and his mother confirm that the mother received the letter, came in contact with Holly, had Holly look at the letter, and gave Holly the specific candy Holly liked.[8]

Although Bennett's brief asserts the State failed to prove all three elements, he makes no argument as to the second element, so we do not address it other than to say the evidence is overwhelming that Bennett knew Holly had been or

---

[8] Bennett's mother testified that she didn't actually do many of the things she admitted doing in the text messages, claiming she just told Bennett she did things so he would stop hounding her.  The district court found Bennett's mother's testimony not credible.

may be summoned as a witness in his sexual-abuse case. Bennett's focus is on the first and third elements. He contends the candy supplied to Holly was not a bribe but simply a method for his mother to "break the ice" with Holly as his mother tried to convince Holly to change her account of events. He further contends that urging Holly to tell the truth is not improper influence of Holly's testimony.

We reject both contentions. A bribe is "anything of value or benefit to induce another to act improperly." *Halleck*, 308 N.W.2d at 58. The text messages between Bennett and his mother show that Bennett knew a certain type of candy was Holly's favorite, so he encouraged his mother to purchase that candy to give to Holly as part of the plan to persuade Holly to change her narrative. A reasonable fact finder could conclude that a special candy that the child favors is something of value to a ten-year-old child. We are not persuaded by Bennett's efforts to reframe the giving of the candy as being merely an ice-breaking method. A reasonable fact finder could find that the candy was offered as a thing of value intended to induce Holly to change her account of the events leading to the sexual-abuse charges against Bennett.

As to Bennett's claim that, even if the candy was a bribe, it was not intended to improperly influence Holly's testimony because all he was trying to do was get her to tell the truth, we once again reject Bennett's efforts to portray his efforts to get Holly to recant her accusations against him as telling the truth. A reasonable fact finder could conclude that Bennett was trying to improperly influence Holly to change her version of events previously provided to law enforcement that led to the sexual-abuse charges against Bennett. *See id.* at 59 (noting that improperly influencing a witness "is not limited to asking a witness to lie" and "[a]n improper

influence includes offers of a bribe to 'persuade the witness to shade or color [the witness's] testimony in a certain way, without actually lying'" (quoting 4 J. Yeager & R. Carlson, Iowa Practice: Criminal Law and Procedure § 445 (1979))).

The district court's finding of guilt on the charge of tampering with a witness is supported by substantial evidence.

### D. Conspiracy to Tamper with a Witness

To prove conspiracy to tamper with a witness based on the facts of this case, the State had to prove:

1. Bennett agreed with his mother

   a. that one or more of them would commit the crime of tampering with a witness; or

   b. attempt to commit the crime of tampering with a witness;

2. Bennett entered the agreement with the intent to promote or facilitate the crime of tampering with a witness;

3. Bennett or his mother committed an overt act; and

4. Neither Bennett nor his mother were a law enforcement agent investigating the offense or assisting law enforcement agents in the investigation when the conspiracy began.

*See* Iowa Code § 706.1; Iowa Crim. Jury Instructions 600.1.

Bennett's challenge to the sufficiency of the evidence supporting his conviction on this charge is based on two arguments. First, he contends there is insufficient evidence that either he or his mother tampered or attempted to tamper with a witness. He incorporates by reference the arguments he used in support of his challenge to the tampering-with-a-witness charge. For the same reasons we

rejected his arguments to the sufficiency of the evidence supporting the tampering charge, we reject them with regard to the corresponding conspiracy charge.

Bennett's second contention is that there is insufficient evidence of an agreement between his mother and him to promote or facilitate the crime of tampering with a witness. We disagree. A reasonable fact finder could find that the text messages between Bennett and his mother establish such an agreement.

We find sufficient evidence to support the district court's finding that Bennett committed the crime of conspiracy to tamper with a witness.

## II.    Trial Court Recusal

Bennett's last contention is that the judge presiding over his case should have recused herself because she had knowledge of Holly's mental-health history from a prior case. We review a district court's recusal decision for an abuse of discretion. *State v. Trane*, 984 N.W.2d 429, 433 (Iowa 2023). Abuse of discretion occurs when the court's decision is based on untenable grounds or the court has acted unreasonably. *Id.* at 434.

Bennett first raised this issue in his amended motion for new trial after the district court issued its ruling finding Bennett guilty. Bennett complains that the judge who presided over his bench trial also presided over a prior case in which Holly's mother sought termination of the parental rights of Holly's father. Bennett contends that, by presiding over the termination-of-parental-rights case, the judge learned details about Holly's "trauma, mental health, and behavioral issues." He further contends that this prior knowledge should have resulted in the judge's recusal, as it would impact the judge's knowledge of Holly's vulnerability, which he argues is key to this case.

Bennett's claim fails for two reasons. First, recusal is required only when the judge's alleged bias or prejudice stems from an extrajudicial source. *Id.*; *see also State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976) ("[E]vidence presented in the trial of a prior cause, or definite views on the law, create no personal bias since they do not stem from an extrajudicial source."). As Bennett asserts only knowledge the judge learned from her work as a judge on a prior case, his claim fails.

Second, "actual prejudice must be shown before a recusal is necessary." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005) (quoting *State v. Sinclair*, 582 N.W.2d 762, 766 (Iowa 1998)). Bennett makes no argument that he suffered actual prejudice in this case as a result of the judge presiding over the prior matter, and we see none. As the court explained in the verbal ruling denying Bennett's motion, Holly did not testify in the termination proceeding. Although the court did hear some testimony regarding Holly's mental health in the prior proceeding, the focus was on the impact her father's behavior had on her, which had no bearing on the issues in Bennett's trial. Further, there was a fair amount of evidence presented regarding Holly's mental-health and behavioral characteristics throughout Bennett's trial, so there is no reason to believe any findings in Bennett's case were based on the judge's involvement in the prior case rather than the evidence presented at Bennett's trial.

In short, Bennett has failed to meet his burden to show grounds for recusal. *See Trane*, 984 N.W.2d at 434 ("The burden of showing grounds for recusal is on the party seeking it." (quoting *State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002))). As the judge had just as much obligation not to recuse herself when there was no

basis for doing so as she did to recuse when there is a basis, *see id.*, we find no abuse of discretion in the district court's decision not to recuse herself.

## III.    Conclusion

Bennett's convictions for all four crimes are supported by substantial evidence.  The district court did not abuse its discretion in refusing to recuse herself from this case due to having presided at a prior termination-of-parental-rights case involving the child victim in this case.

**AFFIRMED.**